Frank Stetina, appellant, v. State Farm Mutual Automobile Insurance Company, a corporation, appellee.
243 N. W. 2d 341

Filed June 30, 1976. No. 40473.

M. J. Bruckner and Richard D. Sievers of Marti, Dalton, Bruckner, O'Gara & Keating, for appellant.

Healey, Healey, Brown & Wieland, for appellee.

Heard before White, C. J., Spencer, Boslaugh, McCown, Newton, Clinton, and Brodkey, JJ.

White, C. J.

This case involves an action to recover medical payments coverage under two policies of insurance issued by the defendant, State Farm Mutual Automobile Insurance Company (hereinafter referred to as State Farm), to the plaintiff in the total amount of $10,000. After the plaintiff had filed his amended petition, the defendant demurred. Defendant subsequently withdrew its demurrer and filed an answer to the plaintiff's petition. The defendant then moved for summary judgment. The District Court sustained defendant's motion for summary judgment and overruled the plaintiff's motion for a new trial. The plaintiff now appeals. For the reasons stated below, we reverse the judgment of the District Court.

The facts giving rise to this case are not in dispute.

On October 20, 1973, the plaintiff's daughter, Diane Stetina, a 17-year-old high school student, was involved in an automobile accident. The car in which she was a passenger was struck by another vehicle driven by Vera Lusins. As a result of this accident, Diane was severely injured. The plaintiff, Diane's father, had incurred as of the date of filing the amended petition, about $17,800 in medical expenses.

At the time of Diane's accident, the plaintiff, Frank Stetina, had in full force and effect two policies of insurance duly issued by the defendant State Farm. Each of the two policies carried medical payments coverage in the amount of $5,000. The defendant State Farm also provided, at the time of Diane's accident, liability coverage and protection to Vera Lusins and her husband in the amount of $50,000 for bodily injury to one person.

After negotiations between the plaintiff's attorneys and James Purdy, State Farm's agent and employee, a settlement of $50,000 in satisfaction of all the claims of Diane and her parents against the Lusinses was reached. As part of this agreement, Frank Stetina, either individually as the parent of Diane or on her behalf as guardian, entered into covenant not to sue the Lusinses.

Following this settlement, medical bills incurred on behalf of Diane were presented to defendant State Farm and a demand was made for payment of the $10,000 in medical payments coverage under Frank Stetina's policies with defendant State Farm. The claim of Frank Stetina was denied by State Farm, and this suit followed.

The District Court found that the plaintiff, by entering into the covenant not to sue the Lusinses, violated the provisions of the insurance policies the plaintiff had with State Farm, and that as a result, the plaintiff's right to recover medical payments was extinguished.

The plaintiff's policies with the defendant provided that the defendant would not be liable for coverage: "2. (a) Unless as a condition precedent thereto there

shall have been full compliance with all terms of this policy."

Relevent terms of the plaintiff's policies are as follows: "3. Assistance and Cooperation of the Insured. The insured shall cooperate with the company, and upon its request, attend hearings and trials, assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such first aid to others as shall be imperative at the time of accident.

"4. Subrogation. Upon payment under this policy, * * * the company shall be subrogated to all the insured's rights of recovery therefor and the insured shall do whatever is necessary to secure such rights and do nothing to prejudice them.

"Upon payment under coverages C and M of this policy the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights."

The defendant's position, which the District Court adopted, is that the plaintiff, by executing a covenant not to sue the Lusinses, destroyed the defendant's right of subrogation against the tort-feasor in violation of the terms of the policies, and consequently the plaintiff was precluded from recovery under the policy.

The plaintiff takes the position that the defendant possessed no right of subrogation against the tort-feasor, Mrs. Lusins, because Mrs. Lusins was the defendant's insured. Therefore, it is argued that plaintiff's execu-

tion of the covenant not to sue the Lusinses could not destroy or prejudice nonexisting subrogation rights, and thus the plaintiff did not violate any provisions of his policies with the defendant so as to be precluded from recovery under the policies.

Both sides agree that in the case where the tort-feasor is either uninsured or else insured by a different insurer, a general release, covenant not to sue, or similar agreement given to the tort-feasor by the insured destroys and prejudices the insurer's right of subrogation against the tort-feasor and consequently releases the insurer from liability to the insured. A recent Nebraska application of this rule is found in Hastings v. Fireman's Fund American Ins. Co., 193 Neb. 417, 227 N. W. 2d 418 (1975). That case involved the plaintiff's attempt to recover from the insurance carrier under uninsured motorist coverage for injuries which the plaintiff sustained when a car in which she was riding was struck by one Mills, an uninsured driver. The plaintiff brought suit against Mills and judgment was entered against Mills after the plaintiff had executed a covenant not to levy on any property of Mills. Thereafter the plaintiff pursued settlement with the insurance carrier, who was willing to settle on the basis of a trust agreement providing for the company's right of action against Mills, but withdrew the settlement offer when it discovered the existence of the covenant not to levy. This court held that the execution of the covenant not to levy on the plaintiff interfered with the insurer's subrogation rights and precluded any right to seek recovery under the policy.

In Bernardini v. Home & Auto. Ins. Co., 64 Ill. App. 2d 465, 212 N. E. 2d 499 (1965), the plaintiffs sought to recover, under their policy, reasonable medical expenses incurred by them as the result of an automobile accident. Their insurance policy contained an express medical subrogation clause and a clause requiring the cooperation of the insured in relation thereto. The plain-

tiffs had settled with the tort-feasor and executed a general release in favor of the tort-feasor. The court held: "The violation by the plaintiffs of the valid subrogation clause precluded their right to recovery." See, also, DeCespedes v. Prudence Mut. Cas. Co., 193 So. 2d 224 (Fla. App., 1967); Foundation Reserve Ins. Co. v. Cody, 458 S. W. 2d 214 (Tex. Civ. App., 1970); Shipley v. Northwestern Mut. Ins. Co., 244 Ark. 1159, 428 S. W. 2d 268 (1968); Poynter v. Aetna Cas. & Sur. Co., 13 Mich. App. 125, 163 N. W. 2d 716 (1968).

The plaintiff seeks to escape application of the above-cited cases and principles to his case by pointing to the fact, that, in this case, the tort-feasor, Mrs. Lusins, was also insured by defendant State Farm. The defendant argues that this circumstance is a fortuitous one and should not dislodge application of the above-cited cases and principle to this case. Resolution of the question presented by the facts of this case, one of first impression in this jurisdiction, requires a review of relevant and analogous authorities.

Midwest Lumber Co. v. Dwight E. Nelson Constr. Co., 188 Neb. 308, 196 N. W. 2d 377 (1972), involved a dispute between an owner and a contractor. Under the contract between the two, the contractor was to construct several buildings on the plaintiff owner's land. The contract also provided that the owner would secure builders' risk or fire and extended insurance coverage. The owner failed to procure such insurance covering the contractor. The owner sued the contractor to recover damages alleged to have been sustained when some of the building frame blew down during construction and had to be replaced. The damage was alleged to be the result of the contractor's negligence. This court held that the owner could not recover from the contractor: "An owner who contracts to procure insurance to cover the contractor and fails to do so is the insurer of the contractor. * * * The failure of the owner to cause the contractor to be named as an insured in accordance with the intent of

the parties as is implicit in the construction contract, causes the owner to become the insurer of the contractor. * * * The rights of a subrogated insurer can rise no higher than the rights of its insured against the third party. * * * An insurer cannot recover by right of subrogation from his own insured." (Citations omitted.)

Connor v. Thompson Constr. & Development Co., 166 N. W. 2d 109 (Iowa, 1969), was a case involving a similar factual situation. In that case the Supreme Court of Iowa also held that, " '* * * an insurer cannot recover by right of subrogation from his own insured.' " *Id.* at 113.

In 44 Am. Jur. 2d, Insurance, § 1820, p. 747, it is stated: "No right of subrogation exists where the wrongdoer is also an insured under the same policy." This principle is illustrated by several cases where the tort-feasor was a named insured within the terms of the insurance policy.

Graham v. Rockman, 504 P. 2d 1351 (Alaska, 1972), involved a suit by the owner, Rockman, of an airplane against Graham, who had rented the airplane from Rockman, for damages caused by Graham's alleged negligence while the airplane was in his possession. The trial judge found in favor of Rockman. On appeal, the Supreme Court of Alaska remanded the case for further proceedings. The court had this to say concerning one of Graham's contentions on appeal: "Graham maintains that he should be regarded as an 'additional insured' under the hull insurance carried by Rockman since use by rental pilots was covered in the policy. Accordingly, the insurance carrier would not be entitled to recover from Graham the amount which it paid to Rockman. It is well settled that an insurer cannot recover by means of subrogation against its own insured."

Miller v. Kujak, 4 Wis. 2d 80, 90 N. W. 2d 137 (1958), was a case arising out of a truck-automobile collision. Miller brought suit for damages sustained when the automobile which he was driving was struck from the

rear by a truck driven by Kujak. Named as defendants in the suit were Kujak, the tort-feasor; Moore Motor Freight Lines, the lessee of the truck; Dodson, Moore's liability insurer; and the owner of the truck. The court held: "Dodson's contention, which the trial court adopted, is that he insured only Moore Motor Freight Lines, and that if and when he pays Miller's judgment against Moore and himself, he will thereby become subrogated to Moore's and Miller's rights against the tort-feasor Kujak, whose negligence caused the damage * * *.

"This contention must fail, however, for the reason that the tort-feasor Kujak was an additional insured under the insurance policy issued by Dodson, and it is settled law in this state that an insurer cannot recover by right of subrogation from his own insured." *Id.* at 86.

In Traders & General Ins. Co. v. Pacific Employers Ins. Co., 130 Cal. App. 2d 158, 278 P. 2d 493 (1955), it was held that where the conditional vendor's liability policy was not restricted in coverage to the named insured, but included users with permission, the vendor's insurer was not entitled to subrogation against the user who was involved in an accident or against the user's liability insurer.

In Pendlebury v. Western Cas. & Sur. Co., 89 Idaho 456, 406 P. 2d 129 (1965) the Supreme Court of Idaho stated: "An insurer is not entitled to recovery by way of subrogation against an alleged wrongdoer who is protected by the policy. 46 C. J. S., Insurance, § 1209b(6), p. 165. This rule appears well supported by the authorities."

Two cases have been brought to our attention by the plaintiff involving factual situations closely on point with the facts of this case. We have carefully examined these cases and find them highly relevant to our disposition of this case.

Dupre v. Vidrine, 261 So. 2d 288 (La. App., 1972), involved a suit by Dupre, a physician, for medical serv-

ices rendered to Vidrine. Vidrine in turn brought in Southern Farm Bureau Casualty Insurance Company as a third-party defendant on the ground that he had a liability policy with Southern Farm which included medical payment coverage and that, under this, Southern Farm was liable for Dr. Dupre's bill. Vidrine had been involved in an automobile accident with Guillory, who was also insured for automobile liability by Southern Farm. Vidrine had settled with Guillory and had given him a written release in settlement of all claims against him and Southern Farm. Southern Farm, the third-party defendant, contended that Vidrine's release of the tort-feasor, Guillory, and his liability insurer destroyed Southern Farm's right of subrogation against the party responsible for the damages, and thereby extinguished Southern Farm's liability to Vidrine for medical payments. In rejecting Southern Farm's position, the court first cited cases recognizing the rule governing impairment of subrogation rights discussed *supra,* in situations where the tort-feasor is either uninsured or insured by a different insurance, and then commented: "These cases are distinguished from the present matter since they involved factual situations where the insured released a third-party tort feasor and a different insurer, thus defeating the subrogation rights of the defendant insurer. In the present case, the insurer which was released is the same as the insurer whose subrogations rights were allegedly defeated and the tort feasor is an insured of this same insurer. In effect, they are saying they should be discharged from liability because they have been deprived of a right of subrogation against themselves and their own insured. We fail to see how this can in any way be prejudicial to the defendant insurer." *Id.* at 290.

In that case, precisely in point, the court therefore rejected the same defense similarly made by State Farm on the ground that there were no subrogation rights to be prejudiced. We also observe, in passing, that the

issue of prevention of double recovery by denial of medical payments in the Dupre case was rejected. In the Dupre case, Southern Farm sought review by the Supreme Court of Louisiana which was denied with the express holding that there was "no error of law" in the Louisiana Court of Appeal decision. Dupre v. Vidrine, 262 La. 312, 263 So. 2d 48.

In a case not in point on the facts, the Louisiana Court of Appeal in a subsequent 1974 decision confirmed the Dupre case and perhaps clarified it. Norris v. Allstate Ins. Co. (La. App.) 293 So. 2d 918. It specifically discussed the Dupre case and stated as follows: "Unquestionably, Southern Farm Bureau could have been deemed bound with or for Guillory for tort damages, including medical payments. Southern Farm Bureau was also responsible for the medical expenses through its contract with Vidrine. Southern Farm Bureau's position was one of dual responsibility. Two obligations arose, one in tort as the result of Guillory's negligence, one in contract as the result of the contract of insurance. Payment of one did not discharge the other. Subrogation would not have taken place on payment of one obligation, since the co-existing obligation remained viable. *Where no subrogation exists, there can be no impairment of subrogation rights.*" (Emphasis supplied.)

The event giving rise to the litigation in Home Ins. Co. v. Pinski Bros., Inc., 160 Mont. 219, 500 P. 2d 945 (1972), was a boiler explosion at a hospital. Home Insurance Company paid $135,000 to the hospital and claimed subrogation to the rights of the hospital against those allegedly responsible for the explosion, including Pinski Brothers, the mechanical contractors, and the architects. The architects tendered defense of the suit to the Home Indemnity Company, a wholly owned subsidiary of plaintiff Home Insurance Company. It was stipulated that the two were one and the same corporate entity. The architects carried a comprehensive liability policy with Home Indemnity. Home Indemnity refused tender

of the defense. The architects then hired their own defense counsel, alleged their insurance policy with Home Indemnity as a defense, and sought recovery of their attorneys' fees. The District Court gave summary judgment to Home Insurance Company against the architects on all issues of insurance coverage. On first appeal to the Supreme Court of Montana, the court held that the alleged negligence of the architects was within the coverage of the architects' comprehensive liability policy with Home Indemnity and remanded the case to the District Court for further consideration of the issues raised for summary judgment. Following the first appeal, the architects moved for summary judgment. The District Court granted the architects' motion for summary judgment and Home Insurance Company appealed. On second appeal, the Supreme Court of Montana affirmed the granting of the architects' motion for summary judgment by the District Court. Finding the language and rationale of the court pertinent, we quote from the opinion at length: "There is yet a further and perhaps more cogent reason why summary judgment for the architects on Home's complaint against them is correct. Here, it is undisputed that the architects have insurance coverage to the extent of $25,000 under their Home Indemnity comprehensive liability policy; that Home Indemnity and Home Insurance are one and the same corporate entity; that *Home as a subrogated insurer of one of its policyholders* (The Deaconess Hospital) *has sued another of its policyholders* (the architects) *whom it has insured against the very liability for which it seeks recovery in Count I of its complaint in an amount in excess of the policy limits.*

"Subrogation is an equitable right. * * * Accordingly, certain equity principles apply in determining subrogation rights: One who seeks equity must do equity, * * *. One who seeks equity must come into court with clean hands, * * *. 'No one can take advantage of his own wrong.' * * *

"*To permit the insurer to sue its own insured* for a liability covered by the insurance policy would violate these basic equity principles, *as well as violate sound public policy.* Such action, if permitted, would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) *permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured;* (4) allow the insurer to take advantage of its conduct and *conflict of interest with its insured;* and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.

"No right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation exists only with respect to rights of the insurer against third persons to whom the insurer owes no duty. 16 Couch on Insurance 2d, § 61:133; see also 46 C. J. S. Insurance § 1209(b); 16 Couch on Insurance 2d, § 61:136. This principle is succinctly stated in *Chenoweth Motor Co. v. Cotton,* 2 Ohio Misc. 123, 207 N. E. 2d 412, 413:

" '* * * it is axiomatic that [an insurance company] has no subrogation rights against the negligence of its own insured.' (Bracketed material paraphrased.)

"To allow subrogation under such circumstances would permit an insurer, in effect, to pass the incidence of the loss, either partially or totally, from itself to its own insured and thus avoid the coverage which its insured purchased. 2 Richards on Insurance, § 185, states the same principle in this language:

" 'An insurer clearly may be subrogated to its insured's claim against a third party who tortuously causes the loss, but no subrogation exists against the insured or co-insured whose negligence caused the loss.'

"For the foregoing reasons, we hold summary judg-

ment in favor of the architects on Home's subrogation complaint against them is correct and is hereby affirmed." (Emphasis supplied.) *Id.* at 225, 226.

In light of the above authorities and of considerations of public policy we hold that under the circumstances of this case, the defendant State Farm had no right of subrogation against the tort-feasor, Mrs. Lusins. Since State Farm possessed no right of subrogation against Mrs. Lusins, the execution of the covenants not to sue the Lusinses by the plaintiff could not have harmed or prejudiced State Farm. "Where no subrogation exists there can be no impairment of subrogation rights." Norris v. Allstate Ins. Co., 293 So. 2d 918 (La. App., 1974). Consequently State Farm's defense to the present action based upon violation of the policy provisions dealing with subrogation and cooperation must fail. It was error to grant defendant's motion for summary judgment.

The judgment of the District Court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.