FIFTH DIVISION

FILED: 6/30/98

No. 1-97-3785

CHARLES BENGE,individually and on ) 

behalf of all persons similarly ) Appeal from the

situated, and JAMES J. CONVERY, ) Circuit Court of

individually and on behalf of all ) Cook County.

persons similarly situated, )

) 

Plaintiffs-Appellants, ) No. 96 CH 05727

) 

v. ) 

)

STATE FARM MUTUAL AUTOMOBILE            ) Honorable

INSURANCE COMPANY, an Illinois ) Lester D. Foreman,

corporation, ) Judge Presiding.

Defendant-Appellee. ) 

PRESIDING JUSTICE HOFFMAN delivered the opinion of the 

court:

The plaintiffs, Charles Benge and James J. Convery, individually and on behalf of all persons similarly situated, appeal from the trial court's dismissal of their second amended class action complaint for breach of contract against the defendant, State Farm Mutual Automobile Insurance Company.  For the reasons which follow, we affirm.

On May 30, 1997, the plaintiffs filed a second amended class action complaint ("complaint") for breach of contract against the defendant.  The plaintiffs purported to represent the class of persons holding automobile insurance policies issued by the defendant who sustained damage to their motor vehicles when they were involved in accidents with persons also insured by the defendant and who were not paid for those damages by the defendant both under the liability coverage contained in the at-fault drivers' insurance policies, and pursuant to the physical damage coverage contained in their own insurance policies.

The complaint alleged that the plaintiff Convery purchased an automobile insurance policy from the defendant which was effective from May 13, 1995, through December 12, 1995.  The physical damage coverage section of that policy provided:  "We will pay for 
loss
 to 
your car
 caused by 
collision
 but only for the amount of each such 
loss
 in excess of the deductible amount."  The policy defined the term "loss" as "each direct and accidental loss of or damage to 1. 
your
 car;" and defined the term collision as "
your car
 upset or hit or was hit by a vehicle or other object."

On November 3, 1995, another car, whose driver was also insured by the defendant, struck and damaged Convery's car.  Convery reported the facts and circumstances of the accident to one of the defendant's agents.  The complaint alleged that Convery's car required $1,156.99 in repairs and that "[t]he invoice for the repair *** was paid in full by [the defendant] pursuant, on information and belief, to the liability coverage which it sold to the driver of the automobile which struck CONVERY's automobile."  The complaint further alleged that the defendant failed to pay Convery for those same damages pursuant to the physical damage coverage provision of his own insurance policy.

The complaint also alleged that the plaintiff Benge purchased an automobile insurance policy from the defendant, which, on information and belief, was identical in all relevant respects to Convery's policy.  On July 7, 1989, while Benge's insurance policy was in effect, a car whose driver was also insured by the defendant struck and damaged Benge's car.  Benge reported the facts and circumstances of the collision to one of the defendant's agents, and, about one month later, the defendant paid Benge $600, the market value of his car.  According to the complaint, the defendant paid Benge pursuant to the liability coverage of the at-fault driver and not under the physical damage coverage provision in his own policy.

The plaintiffs alleged that they paid all premiums and complied with all terms and conditions of their insurance policies and that the defendant breached its contractual obligation by failing to pay the plaintiffs' damages under the physical damage coverage of those policies.  The complaint charged that the defendant's payments on behalf of the at-fault drivers in no way satisfied the defendant's independent contractual obligation to pay the plaintiffs under the physical damage coverage contained in the plaintiffs' own insurance policies.  In their prayer for relief, the plaintiffs asked that the court declare the action to be a proper class action and to award the plaintiffs and the members of the class compensatory damages, pre-judgment and post-judgment interest, and the costs and expenses of the litigation.  The plaintiffs also asked the court to enjoin the defendant from engaging in such practices in the future.

On June 27, 1997, the defendant filed a motion to dismiss the plaintiffs' complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1996)) and a memorandum in support of its motion.  The defendant alleged, 
inter
 
alia
, that 1) the complaint was factually insufficient and failed to plead a breach of contract because the plaintiffs admitted that the defendant paid them for their damages; 2) the plaintiffs' allegations that they were paid pursuant to the policies of the at-fault drivers rather than their own policies were unsupported factual conclusions; and 3) the complaint was insufficient because the plaintiffs had attached to it the incorrect insurance policy for Convery and no insurance policy for Benge.  The defendant also pointed out certain factual inconsistencies in the complaint.  As an example, the complaint alleged that Benge's accident took place in Chicago, while an automobile claim report attached as an exhibit to the complaint stated that the accident occurred in Wheeling.  Additionally, the defendant argued that the complaint was missing crucial facts, such as the names of the other persons involved in the accidents; the facts, circumstances and locations of the accidents; the names of the defendant's agents to whom Benge and Convery reported their accidents; and specific facts supporting the plaintiffs' conclusions that the other drivers involved in the accidents were at fault.  Alternatively, the defendant contended that dismissal of the complaint was appropriate because the plaintiffs had no right to recover where, under the terms of their insurance policies, their rights to recover against the at-fault drivers passed to the defendant once the defendant paid the plaintiffs for their damages.  The provision to which the defendant referred provides:

"Our Right to Recover Our Payments

***

d. Under all other coverages, and except as 

provided for within the medical payments

coverage, the right of recovery of any party

we pay passes to us.  Such party shall:

(1) not hurt our rights to recover; and

(2) help us get our money back."

On September 19, 1997, the trial court granted the defendant's motion to dismiss the complaint, finding that the plaintiffs had not suffered a "loss" as defined by their insurance policies because they had been compensated for their damages under the at-fault drivers' insurance policies.  On appeal, the plaintiffs contend that the trial court improperly dismissed their complaint, arguing that they suffered a "loss" as defined by their insurance policies and that their complaint adequately alleged a cause of action for breach of contract.  The plaintiffs claim that they are entitled to recover both under the physical damage coverage in their own policies and from the at-fault drivers, also insured by the defendant.  The plaintiffs rely on 
Control Specialists Co. Inc. v. State Farm Automobile Insurance Co.
, 228 Neb. 642, 423 N.W.2d 775 (1988), and other foreign authority, in support of their argument that the defendant cannot enforce a right of subrogation against its own at-fault insured.

A section 2-615 motion to dismiss, which attacks only the legal sufficiency of a complaint, admits all well-pleaded facts, but does not admit unsupported legal or factual conclusions.  
Spillyards v. Abboud
, 278 Ill. App. 3d 663, 668, 662 N.E.2d 1358, 1361 (1996).  The court must interpret the factual allegations in the light most favorable to the plaintiff.  
Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.
, 275 Ill. App. 3d 452, 457, 654 N.E.2d 1109, 1114 (1995).  A complaint should be dismissed pursuant to section 2-615 only if no set of facts could be proven which would entitle the plaintiff to the relief he seeks.  
People ex rel. Peters v. Murphy-Knight
, 248 Ill. App. 3d 382, 386, 618 N.E.2d 459, 463 (1993).  We review the trial court's ruling on a motion to dismiss 
de
 
novo
, and can affirm on any basis present in the record.  
Toombs v. City of Champaign
, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50, 51 (1993); 
Lake County Grading Co.
, 275 Ill. App. 3d at 457.

In order to state a cause of action for breach of contract, the plaintiff must allege that a contract existed, that the plaintiff performed his obligations under the contract, that the defendant breached the contract, and that the plaintiff was injured by the defendant's breach.  
Talbert v. Home Savings of America, F.A.
, 265 Ill. App. 3d 376, 379, 638 N.E.2d 354, 357 (1994).  A complaint which fails to state essential allegations is deficient and may not be remedied by liberal construction.  
OnTap Premium Quality Waters, Inc. v. Bank of Northern Illinois, N.A.
, 262 Ill. App. 3d 254, 259, 634 N.E.2d 425, 429 (1994).

The plaintiffs' complaint admits that the defendant paid them for the damage to their cars, but alleges that the defendant paid those damages pursuant to the liability coverage of the at-fault drivers.  Convery's insurance policy provides that the defendant will pay for any loss due to collision "
but only for the amount of each such 
loss
 in excess of the deductible amount."  The policy further provides: "If the 
collision
 is with another motor vehicle insured with us, 
you
 do not pay 
your
 deductible if it is $100 or less as we pay it."  Convery's insurance policy, which is attached as an exhibit to the complaint, includes a $500 deductible for collision coverage.  Convery alleged, however, that the defendant paid his damages in full.  The complaint also alleged that Benge's insurance policy was identical in all relevant respects to Convery's and that the defendant paid Benge the full market value of his car.  When viewed in the light most favorable to the plaintiffs, we believe that these factual allegations support the conclusion that the defendant did not reduce the payments to either plaintiff by the $500 deductible provided for pursuant to the physical damage coverage in their policies.  We can, therefore, reasonably infer that the defendant paid, at minimum, $500 of the plaintiffs' damages pursuant to the liability coverage of the at-fault drivers.

As stated earlier, the physical damage coverage in the plaintiffs' insurance policies provided that, upon the defendant's payment of the plaintiffs' damages, their rights to recover against any third party passed to the defendant.  The plaintiffs contend that the defendant is not entitled to benefit from this provision because an insurance carrier cannot exercise a right of subrogation against its own insured.  The defendant responds that the policy provision at issue is not a subrogation clause and that, even if it is, Illinois law does not prevent an insurance carrier from subrogating against a party it insures under a different policy than that from which the right to subrogate arises.

We reject the defendant's argument that the transfer of rights provision contained in the plaintiffs' insurance policies is not a subrogation clause.  Subrogation is "the substitution of one individual in the place of a claimant to whose rights he succeeds in relation to the debt or claim asserted which he has paid involuntarily."  
State Farm General Insurance Co. v. Stewart
, 288 Ill. App. 3d 678, 686, 681 N.E.2d 625, 630 (1997).  The provision in question stated that the plaintiffs' rights to recover passed to the defendant when it paid the plaintiffs' damages pursuant to their own coverage.

It is generally said that an insurance carrier may not subrogate against its own insured.  
16 Couch on Insurance 2d §61:136 (rev. 1983); 44 Am. Jur. 2d 
Insurance
 §1794 (1982); 2 W. Freedman, Richards on Insurance §185 (5th ed. 1952).  However, Illinois courts have only applied this rule to prevent an insurance carrier from subrogating against an insured or coinsured under the policy which gives rise to the right of subrogation.  In 
Dix Mutual Insurance Co. v. LaFramboise
, 149 Ill. 2d 314, 317, 597 N.E.2d 622, 623 (1992), for instance, the insurance carrier paid the insured building owner for fire damage and then sought to recover from one of the building's tenants, who had allegedly started the fire.  The court found that the tenant was a coinsured under the insurance policy and, as such, the insurance carrier could not maintain a subrogation action against him.  
Dix Mutual
, 149 Ill. 2d at 323.  See also 
Reich v. Tharp
, 167 Ill. App. 3d 496, 501-04, 521 N.E.2d 530, 533-36 (1988); 
McGinnis ex rel. C.I.E. Service Corp. v. LaShelle
, 166 Ill. App. 3d 131, 135, 519 N.E.2d 699, 701 (1988); 
Western States Mutual Insurance Co. v. Standard Mutual Insurance Co.
, 26 Ill. App. 2d 378, 385-86, 167 N.E.2d 833, 837 (1960).  Courts have applied this "anti-subrogation" rule to prevent an insurance carrier from transferring a loss back to the party who has paid for protection from the same loss.  
LaSalle National Bank v. Massachusetts Bay Insurance Co.
, 958 F.Supp. 384, 388 (N.D. Ill. 1997).

The defendant, relying on 
Gibson v. Country Mutual Insurance Co.
, 193 Ill. App. 3d 87, 549 N.E.2d 23 (1990), contends that Illinois law allows an insurance carrier who pays a claim under one policy to subrogate against a party it insures under a separate policy.  In 
Gibson
, the plaintiff recovered medical payments under her own insurance policy and then negotiated a settlement with the at-fault driver.  The plaintiff sought to prevent her insurance carrier from enforcing subrogation and reimbursement provisions in her policy to recover the medical payments it paid her from the settlement she received from the at-fault driver, whom it also insured.  
Gibson
, 193 Ill. App. 3d at 88-89.  She argued that enforcement of the subrogation and reimbursement provisions in her policy violated public policy because she had not been fully compensated for her damages.  
Gibson
, 193 Ill. App. 3d at 89-91.  
The court rejected the argument and allowed the defendant to recover the medical payments from the plaintiff's settlement with the at-fault driver.  
Gibson
, 193 Ill. App. 3d at 90-92.

Although the 
Gibson
 court allowed an insurance carrier to apply a subrogation and reimbursement provision against one of its own insureds under facts similar to those in the instant case, we do not find 
Gibson
 instructive here.  The policy in 
Gibson
 contained both reimbursement and subrogation language.  In addition, the plaintiff there did not raise, and the court did not address, the specific issue presented here.  The question of whether an insurance carrier can exercise its subrogation rights under one policy against a party it insures under a different policy appears to be one of first impression in Illinois.

The plaintiffs urge us to adopt the holdings of foreign jurisdictions which have applied the anti-subrogation rule to cases, such as the instant one, which involve two separate insureds under two separate policies.  See 
Control Specialists Co. Inc. v. State Farm Mutual Automobile Insurance Co.
, 228 Neb. 642, 423 N.W.2d 775 (1988); 
Stetina v. State Farm Automobile Insurance Co.
, 196 Neb. 441, 243 N.W.2d 341 (1976); 
Richards v. Allstate Insurance Co.
, 193 W.Va. 244, 455 S.E.2d 803 (1995); 
Home Insurance Co. v. Pinski Brothers, Inc.
, 160 Mont. 219, 500 P.2d 945 (1972); 
Moring v. State Farm Mutual Automobile Insurance Co.
, 426 So.2d 810 (Ala. 1982); 
Dupre v. Vidrine
, 261 So.2d 288 (La. App. 1972); Compare 
Maynard v. State Farm Mutual Automobile Insurance Co.
, 902 P.2d 1328 (Alaska 1995)(court allowed defendant insurance carrier reimbursement of medical expenses insured received from third party also insured by defendant); 
Norris v. Allstate Insurance Co.
, 293 So.2d 918 (La. App. 1974) (court allowed insurance carrier to subrogate against tortfeasor, who was also its insured, pursuant to terms of policy).

In 
Control Specialists Co., Inc. v. State Farm Mutual Automobile Insurance Co.
, 228 Neb. 642, 644, 423 N.W.2d 775, 777 (1988), the Nebraska Supreme Court held that

"where two motor vehicles covered by the same insurance carrier collide, the nonnegligent driver may recover for damage to his vehicle under the negligent driver's liability insurance and again under the property damage clause of his own insurance policy unless the nonnegligent driver's policy limits such recovery."

While it is unclear what provisions the nonnegligent driver's policy contained, the court in 
Control Specialists
 based its ruling on the principles set forth in 
Stetina v. State Farm Mutual Automobile Insurance Co.
, 196 Neb. 441, 243 N.W.2d 341 (1976).

In 
Stetina
, the plaintiff's insurance policy contained a subrogation clause providing that, upon payment under the policy, the insurance carrier was subrogated to the insured's rights of recovery.  
Stetina
, 243 N.W.2d at 342.  After a collision between two parties both insured by the defendant insurance carrier, the plaintiff negotiated a settlement with the other party to the accident.  When the plaintiff then attempted to collect medical payments under his own policy, the insurance carrier denied the claim, arguing that its obligation to pay had been extinguished because the plaintiff violated the terms of the policy by destroying the carrier's right to subrogation against the tortfeasor.  
Stetina
, 243 N.W.2d at 343-43.  The 
Stetina
 court held that the plaintiff had not impaired the insurance carrier's right of subrogation because the carrier had no right of subrogation against the tortfeasor, whom it also insured.  
Stetina
, 243 N.W.2d at 347.

In 
Home Insurance Co. v. Pinski Brothers, Inc.
, 160 Mont. 219, 500 P.2d 945 (1972),
 the plaintiff insurance carrier paid the insured hospital for damages resulting from a boiler explosion.  The plaintiff then filed a negligence action against the hospital's architects.  The defendant architects tendered the defense of the action to their insurance carrier, which was a wholly owned subsidiary of the plaintiff.  When the architects' insurance carrier refused the tender, the architects hired their own attorney and filed a counterclaim against their insurance carrier.  
Home Insurance
, 500 P.2d at 946-47.  The Montana Supreme Court found that allowing an insurance carrier to sue its own insured in such a situation violated equitable principles and public policy.  The court stated that:

"Such action, if permitted, would (1) allow the insurer to expend premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured."

Home Insurance
, 500 P.2d at 949.

In 
Richards v. Allstate Insurance Co.
, 193 W.Va. 244, 249, 455 S.E.2d 803, 808 (1995), the Supreme Court of Appeals of West Virginia also held that "[a]n insurance carrier may not rely upon a subrogation clause in its policy to receive reimbursement when it also insures the tortfeasor."  
The court suggested that, in order to prevent double recovery by one of its insureds, an insurance carrier must include in its policies "clear and unambiguous language in its policy providing for the reimbursement" of payments made to its insured to the extent that the insured is compensated by a settlement with or judgment against another party insured by the same carrier.  
Richards
, 455 S.E.2d at 808.

The defendant here contends that extending the anti-subrogation rule to cases involving different insureds under different policies would contravene Illinois public policy against double recovery.  See 
Hoglund v. State Farm Mutual Automobile Insurance Co.
, 148 Ill. 2d 272, 277-81, 592 N.E.2d 1031, 1033-35 (1992) (construing ambiguous uninsured motorist coverage set-off provision to allow set-off only to extent necessary to prevent double recovery); 
Wilson v. The Hoffman Group, Inc.
, 131 Ill. 2d 308, 321-22, 546 N.E.2d 524, 530 (1989) ("double recovery is a result which has been condemned"); 
Popovich v. Ram Pipe & Supply Co., Inc.
, 82 Ill. 2d 203, 208-09, 412 N.E.2d 518, 521 (1980); 
Michael v. Fansteel, Inc.
, 235 Ill. App. 3d 961, 965, 602 N.E.2d 494, 496-97 (1992)("Illinois has a strong public policy against a plaintiff's double recovery for the same injury").  The plaintiffs contend that, as a result of the rulings in 
Control Specialists
 and 
Stetina
, in both of which cases the instant defendant was a party, the defendant was aware that it could not enforce subrogation rights against its own insured.  The plaintiffs argue that the defendant could have rewritten its policies to include unambiguous reimbursement language applying to such situations but chose not to do so.

The right to subrogation originated in equity, but may now arise at common law, by statute or by contract.  
In re Estate of Scott
, 208 Ill. App. 3d 846, 848, 567 N.E.2d 605, 606 (1991).  Where the right is created by an enforceable subrogation clause in a contract, the contract terms, rather than common law or equitable principles, control.  
Capitol Indemnity Corp. v. Strike Zone, S.S.B.&B. Corp.
, 269 Ill. App. 3d 594, 596, 646 N.E.2d 310, 312 (1995).  The language in the plaintiffs' insurance policies clearly stated that, if the defendant paid the plaintiffs for damages to their vehicles, it would obtain the plaintiffs' rights to recover against a third party.  The policies did not limit the transfer of rights to those against third parties not insured by the defendant.  An unambiguous insurance policy should be enforced as written to the extent that it does not violate public policy.  
King v. Allstate Insurance Co.
, 269 Ill. App. 3d 190, 192, 645 N.E.2d 503, 505 (1994).  
We must consider, therefore, the competing public policy considerations implicated by the question before us.

We recognize that allowing an insurance carrier to subrogate against its own insured might create a conflict of interest in some situations.  We do not believe, however, that the instant case is one of those situations.  In this case, Convery sustained $1,156.99 in damages and Benge sustained $600 in damages.  It is clear that the limits of the at-fault insureds' liability coverage exceeded the plaintiffs' damages in both cases.  Under these circumstances, no conflict of interest exists between the defendant and the at-fault insureds to prevent subrogation because the defendant would have no interest in suing the at-fault insureds merely to reimburse itself under the at-fault driver's liability coverage.  A conflict of interest might arise where damages paid under the innocent insured's policy exceed the limits of the at-fault insured's policy coverage, giving the insurance carrier an interest in suing its own insured for the excess.  However, as we do not have that factual situation before us, we need not determine whether, and to what extent, the anti-subrogation rule would apply under those circumstances.

We conclude, therefore, that the unambiguous language of the plaintiffs' insurance policies granted a right of subrogation to the defendant for all sums paid to the plaintiffs under the physical damage coverage contained in their policies, and the enforcement of that right against an at-fault driver also insured by the defendant presents no conflict of interest and does not violate public policy when, as in this case, the at-fault driver's liability coverage exceeds the amount of the claim to which the defendant is subrogated.

Next, the plaintiffs argue that, even if the defendant has a valid subrogation right, it cannot exercise that right because it never paid for their losses under their policies.  Clearly, an insurance carrier may not exercise its right to subrogation until it has paid the insured's damages under the policy giving rise to the subrogation rights.  
Stewart
, 288 Ill. App. 3d at 686-87; 
Capital Indemnity Corp.
, 269 Ill. App. 3d at 596. 
 Courts have applied this rule in cases where an insurance carrier brings a subrogation action against a third party before the carrier has paid damages to its own insured under the policy giving rise to the right of subrogation.  See 
Johnson v. State Farm Fire & Casualty Co.
, 151 Ill. App. 3d 672, 674, 503 N.E.2d 602, 604 (1987); 
Providence Washington Insurance Co. v. American Bridge Division of United States Steel Corp.
, 200 Ill. App. 3d 597, 600, 558 N.E.2d 396, 397-98 (1990).  However, we find these authorities distinguishable on their facts because, for the reasons which follow, we find the defendant's single payment of the plaintiffs' total damages to be nothing more than the simultaneous discharge of its contractual obligations to both the plaintiffs and the at-fault drivers along with the exercise of its subrogation rights under the plaintiffs' insurance policies.

The accidents described in the plaintiffs' complaint triggered the defendant's contractual obligations under both the physical damage coverage contained in the plaintiffs' insurance policies and the liability coverage in the at-fault drivers' insurance policies.  If the defendant had first paid the plaintiffs the amount of their losses minus their $500 deductibles under the physical damage coverage contained in their own policies, the defendant would have been subrogated to the plaintiffs' rights against the at-fault drivers to the extent of those payments.  This would leave the plaintiffs with $500 claims against the at-fault drivers which the defendant would have been obligated to pay under the at-fault drivers' liability coverage.  Thereafter, the defendant would have been required to satisfy its own subrogation claims under the liability coverage in the at-fault drivers policies; that is to say, the defendant would have been required to pay itself.  The net result being: the plaintiffs would have recovered the total amount of their losses, and nothing more; the defendant would have paid the total amount of the plaintiffs' losses, and nothing more; and the tort liability of the at-fault drivers for the plaintiffs' losses would have been extinguished.  We, however, think it absolutely senseless to require an insurance carrier to go through such accounting machinations when, as in this case, it can discharge its obligations under both the physical damage coverage contained in one insured's policy and the liability coverage contained in the policy of another insured by simply issuing one check for the total loss sustained.  This single payment scheme is nothing more than a commercially efficient means by which the defendant discharges its contractual obligations to both of its insureds and at the same time exercises its valid subrogation rights.  Both of the defendant's insureds have received the benefit of their bargains; the insured whose property was damaged has been reimbursed in full and the at-fault insured's liability for that damage has been extinguished.

For these reasons, we find that the trial court correctly dismissed this case for the plaintiffs' failure to state a cause of action upon which relief could be granted.

Affirmed.

THEIS and HOURIHANE, JJ., concur.