CHUBB INSURANCE COMPANY, as Subrogee of Opus North Corporation, Plaintiff-Appellant, v. BRIAN DeCHAMBRE et al., Defendants-Appellees.

First District (3rd Division)   No. 1—02—3686

Opinion filed March 24, 2004.

Michael F. Zimmermann, Russell M. Barnett, and Elena B. Penick, all of Raysa & Zimmermann, Ltd., of Park Ridge, for appellant.

William G. Berg, of Law Offices of David A. Izzo & Associates, for appellees.

JUSTICE HALL delivered the opinion of the court:

The plaintiff, Chubb Insurance Co. (Chubb), as subrogee of Opus North Corp. (Opus), filed suit against the defendants, Brian DeChambre and Prairie Material Sales, Inc. (Prairie), seeking damages resulting from Mr. DeChambre's negligence. The circuit court of Cook County granted the defendants' motion for summary judgment. Chubb appeals.

On appeal, Chubb raises the following issues: (1) whether the granting of summary judgment based on the anti-subrogation rule was proper; (2) whether public policy considerations support Chubb's subrogation claim; and (3) whether the exculpatory language on the delivery tickets waived Chubb's right to subrogation.

In its complaint, Chubb alleged that, on October 27, 1998, Mr. DeChambre was operating a cement truck, owned by Prairie, and was making a delivery to the Willow Creek Center, a construction site for which Opus was the general contractor, as well as the owner of one of the buildings at the site. In operating the truck, Mr. DeChambre backed into a support column, causing the collapse of the completed roof of the building Opus owned. Opus sustained property damage in the amount of $105,021.90.

Chubb further alleged that it was entitled to proceed against the defendants because it made payments to or on behalf of its insured, Opus, pursuant to a policy of insurance issued by Chubb to Opus (the policy) and, therefore, owned the claims against the defendants.

The defendants filed a request to admit facts. Chubb was requested to admit or deny the existence of endorsement No. 9 to the policy and whether it was in effect on October 28, 1998. Endorsement No. 9 provided in pertinent part as follows:

> **"ADDITIONAL NAMED INSURED**
> **Contractors and subcontractors of any [sic] all tiers, and any owner of a specific builders risk project where Opus North corporation is contractually responsible for purchasing builders risk insurance as covered under this policy, and not more specivicspecificallyd [sic] elsewhere."**

Subsequently, Chubb filed its answer to the request to admit facts, admitting that endorsement No. 9 was part of the policy issued by Chubb to Opus and that it was in effect on October 27, 1998.

On March 21, 2002, the defendants filed a motion for summary judgment. In their motion, the defendants argued that, pursuant to endorsement No. 9, which Chubb admitted was part of the policy and in effect on the day of the accident, the defendants were additional insureds on Opus's policy. Since an insurance carrier cannot subrogate against its own insured, the defendants were entitled to judgment as a matter of law.

On July 12, 2002, Chubb filed its response to the motion for summary judgment. While acknowledging that the defendants were named as additional insureds on Opus's policy, Chubb argued that the anti-subrogation rule did not apply in this case based on the no-coverage exception to the rule. Chubb maintained that the policy was intended to apply only to claims made by third parties and that the claim in this case involved damage to Opus's property.

On November 18, 2002, the circuit court issued its memorandum opinion and order. The court observed that Chubb had conceded that the defendants were additional insureds on the policy. The court found that the damage to the building was covered by the policy. Since the defendants were additional insureds under the policy and Chubb was not permitted to subrogate against its own insured, the circuit court granted the defendants' motion for summary judgment.

This timely appeal followed.

## ANALYSIS

### I. STANDARD OF REVIEW

This court reviews motions for summary judgment *de novo*. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 757 N.E.2d 481, 491 (2001).

■ Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Prowell v. Loretto Hospital*, 339 Ill. App. 3d 817, 822, 791 N.E.2d 1261, 1265 (2003). The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Prowell*, 339 Ill. App. 3d at 822, 791 N.E.2d at 1265. In determining whether a genuine issue of material fact exists, a court must construe the pleadings, admissions and affidavits strictly against the movant and liberally in favor of the opponent. *Prowell*, 339 Ill. App. 3d at 822, 791 N.E.2d at 1265. A triable issue of material fact exists where the material facts are disputed or where reasonable persons might draw different conclusions from undisputed facts. *Prowell*, 339 Ill. App. 3d at 822, 791 N.E.2d at 1265.

## II. ANTI-SUBROGATION RULE

■ At the outset, we are confronted with the defendants' assertion that Chubb has waived certain of its arguments on appeal because it failed to raise them in the circuit court. See *Lajato v. AT&T, Inc.*, 283 Ill. App. 3d 126, 136, 669 N.E.2d 645, 652 (1996) (contentions not raised in the trial court are waived on appeal, even in a summary judgment case).

Nevertheless, this court is not bound by the principle of waiver and, in the interest of a just result, we may elect to address an argument. See *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 584 N.E.2d 116 (1991). We elect to address Chubb's arguments on the merits.

■ The doctrine of subrogation is a creature of chancery and is a method whereby one who has involuntarily paid a debt or claim of another succeeds to the rights of the other with respect to the claim or debt paid. *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 319, 597 N.E.2d 622, 624 (1992). The right of subrogation is an equitable right and remedy which rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall. *Dix Mutual*, 149 Ill. 2d at 319, 597 N.E.2d at 624. Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. *Dix Mutual*, 149 Ill. 2d at 319, 597 N.E.2d at 624. There is no general rule that can be laid down to determine whether a right of subrogation exists since this right depends upon the equities of each particular case. *Dix Mutual*, 149 Ill. 2d at 319, 597 N.E.2d at 624.

■ However, it is well settled that an insurer may not subrogate against its own insured or any person or entity who has the status of a co-insured under the insurance policy. *Dix Mutual*, 149 Ill. 2d at 323, 597 N.E.2d at 626. In *Dix Mutual*, the court held that a tenant, by the payment of rent, had contributed to the payment of the insurance premium, thereby gaining the status of a co-insured. Since the landlord and the tenant intended for the insurance policy to cover any fire damage to the premises, regardless of who caused it, the insurance company could not maintain an action against the tenant. *Dix Mutual*, 149 Ill. 2d at 323, 597 N.E.2d at 626.

Chubb contends that the anti-subrogation rule does not apply in this case because the defendants did not attain the status of additional insureds. Chubb maintains that in order for the anti-subrogation rule to bar its claim in this case, all of the following must be true: (1) premiums must have been paid to include the defendants as additional insureds; (2) there must have been a contract between Opus and the

defendants; (3) the insurance policy must entitle the defendants to coverage for damage to their truck or for damage done by the defendants to the primary insured's property; and (4) the extent of the damages must exceed the defendants' coverage under their primary insurance.

Chubb argues that there is no evidence that any premiums were paid by Opus to provide additional coverage to the defendants. See *American Country Insurance Co. v. Cline*, 309 Ill. App. 3d 501, 722 N.E.2d 755 (1999) (it would be inequitable to allow an additional insured to avoid responsibility for its own conduct and seek full coverage where the insurer has not been fully compensated); see also *Benge v. State Farm Mutual Automobile Insurance Co.*, 297 Ill. App. 3d 1062, 697 N.E.2d 914 (1998) (courts have applied the anti-subrogation rule to prevent an insurance carrier from transferring a loss back to the party who has paid for protection from the same loss). Chubb further argues that there is no evidence of any contract or agreement between Opus and the defendants to include the defendants as additional insureds.

The builder's risk coverage form of the policy issued to Opus provides in pertinent part as follows:

"**12. SUB-CONTRACTORS**

With respect to construction or installation work performed for the Insured by sub-contractors, such sub-contractors may, at the request of the Insured, be included as an Additional Insured but only with respect to such work performed by the aforesaid sub-contractors, the value of which shall have been included in the contract price (in accordance with Valuation, Clause 7, of this policy) reported to the Company and on which premium has been paid. In the event the value of the said work is not included in the contract price reported to the Company, coverage under this clause with respect to sub-contractor's work shall not apply."

However, the language of paragraph 12 limits it to construction and installation subcontractors. At the time of the accident in this case, Mr. DeChambre was making a delivery to the construction site. There is no allegation or evidence that Prairie was a construction or installation subcontractor. Therefore paragraph 12 is not controlling.

Pursuant to endorsement No. 9, the defendants, as subcontractors, were additional named insureds under Opus's policy. In its answer to the request to admit facts, Chubb admitted that endorsement No. 9 provided that contractors "and subcontractors of every tier" were additional named insureds. Further, on appeal Chubb concedes that, in its response to the motion for summary judgment, it acknowledged that Prairie was named as an additional insured under

Opus's builder's risk policy. However, Chubb argues that it never intended to admit that the defendants had satisfied the requisite conditions to actually be additional insureds.

■ Regardless of its intentions, by its answer to the request to admit facts and its response to the motion for summary judgment, Chubb has admitted that the defendants were additional insureds.

Chubb's reliance on *United States Fire Insurance Co. v. Hartford Insurance Co.*, 312 Ill. App. 3d 153, 726 N.E.2d 126 (2000), is misplaced. In that case, this court held that since the policy of insurance required a written agreement in order for a party to be named as an additional insured, an oral agreement to be named as an additional insured would not be enforceable. In the present case, endorsement No. 9 was part of the contract and by its terms included Prairie as an additional insured. See also *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75, 777 N.E.2d 610 (2002) (the reviewing court distinguished *United States Fire* on the basis that, unlike that case where the only written evidence conferring additional insured status was issued after the accident, corporate practice and written documents in the record confirmed the defendant's status as an additional insured).

We conclude that the defendants were additional insureds under the terms of the policy.

Next, Chubb maintains that, even if the defendants were additional insureds, the anti-subrogation rule does not apply where the policy does not provide coverage to the defendants for the harm at issue.

■ The anti-subrogation rule is intended to prevent an insurer from recovering from its insured that loss or damage the risk of which the insured had passed along to the insurer under the policy. *LaSalle National Bank v. Massachusetts Bay Insurance Co*, 958 F. Supp. 384, 388 (N.D. Ill. 1997); 16 Couch on Insurance 3d § 224.3, at 18 (2000).

> "The anti-subrogation rule is supported by two public policy considerations. First, the insurer should not be able to pass its loss to its own insured, thus avoiding coverage which its insured has purchased and paid in the forms of premiums. ***
>
> The second public policy concern is that the insurer should not be placed in a situation where there exists a potential conflict of interest, thereby possibly affecting the insurer's incentive to provide a vigorous defense for one of its insureds." 16 Couch on Insurance 3d § 224.3, at 18-19.

Chubb relies on an exception to the anti-subrogation rule that allows an insurer to subrogate against its own insured where the risk is not covered by the insurance policy. See *LaSalle National Bank*, 958 F. Supp. at 388.

The policy provides as follows:

"**1. PROPERTY COVERED**

(a) This policy covers property of the Insured or property of others for which the Insured may be legally liable ***.

* * *

**2. PROPERTY AND INTEREST NOT COVERED**

This policy does not cover:

(a) contractor's or subcontractor's equipment, machinery and tools of every description, trailers ***

(b) automobiles or other vehicles designed for highway use, watercraft, and/or aircraft."

And:

"**5. PERILS INSURED**

This policy insures against all risks of direct physical loss or damage to the insured property from any external cause except as hereafter excluded."

Chubb argues that the defendants did not have coverage under the policy because either the defendant's truck was not covered under the policy or the policy did not provide coverage where the covered property *causes* the damage. However, the defendants have never made a claim for damages to the truck Mr. DeChambre was driving.

Chubb then argues that the policy did not provide the defendants, as additional insureds, coverage for damage to Opus's property.

The parties agree that an "insured" in a policy is not limited to the named insured but includes anyone insured under the policy. The policy covers "the property of others for which the Insured may be legally liable."[1] The term "others" is not limited in any way. Thus, Opus's building was "property of others," and the damage to Opus's building was a loss covered by the policy for which the defendants were legally liable.

Finally, Chubb maintains that its policy is excess coverage and therefore not available to the defendants since they were adequately covered by their own primary insurance. In their answers to interrogatories, the defendants acknowledged that they were being afforded a defense and coverage by Transportation Insurance Co. (Transportation) under a policy with limits of $1 million.

Chubb's policy provided in pertinent part as follows:

"**14. OTHER INSURANCE**

If at the time of loss or damage there is any other insurance, whether such other insurance be in the name of the Insured or any third party, which would apply in the absence of this policy, the

---

[1]Chubb assumes but fails to explain why the above language requires a bailor/bailee relationship.

insurance under this policy shall only apply as excess insurance over such other insurance."

The purpose of excess insurance is to protect the insured from a loss in excess of the coverage provided by the underlying insurance. *Bailey v. State Farm Fire & Casualty Co.*, 267 Ill. App. 3d 653, 656, 642 N.E.2d 1323, 1326 (1994). Excess insurance is not available until the primary insurance has been exhausted. *Bailey*, 267 Ill. App. 3d at 656, 642 N.E.2d at 1326.

Chubb points out that the damages in this case were $105,021.90, an amount substantially less than the $1 million coverage afforded the defendants under their policy with Transportation.

It has been held that the anti-subrogation rule does not apply where the exclusions in the policy render it inapplicable to the loss. *North Star Reinsurance Corp. v. Continental Insurance Co.*, 82 N.Y.2d 281, 296, 624 N.E.2d 647, 654, 604 N.Y.S.2d 510, 517 (1993) (general contractors' liability policy was subject to several exclusions, an excess insurance policy and a workers' compensation policy). The fact that the defendants had primary coverage through the Transportation policy is not an exclusion of coverage under the policy in this case.

In *Pennsylvania General Insurance Co. v. Austin Powder Co.*, 68 N.Y.2d 465, 502 N.E.2d 982, 510 N.Y.S.2d 67 (1986), Austin Powder rented a truck from Bison Ford. Bison Ford agreed to obtain primary insurance, and Austin Powder agreed to indemnify Bison Ford for liability arising out of Austin Powder's use of the truck. Both Austin Powder and Bison Ford were named as additional insureds on a Liberty Mutual insurance policy. Liberty Mutual paid a claim resulting from an accident caused by Austin Powder's use of the truck. Bison Ford then initiated an indemnification action against Austin Powder.

In upholding the appellate division's dismissal of the indemnification claim, albeit for different reasons, the Court of Appeals first noted that Bison Ford's indemnification claim was that of its insurer Liberty Mutual. The court then noted:

"The insurer's right of subrogation, long recognized as a matter of equity, has traditionally been applied to claims against third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse [citations]. A third party, by definition, is one to whom the insurer owes no duty under the insurance policy through which its loss was incurred [citation]. *** To allow the insurer's subrogation right to extend beyond third parties and to reach its own insured would permit an insurer, in effect, 'to pass the incidence of the loss *** from itself to its own insured and thus avoid the coverage which its insured purchased.' [Citation.]" *Pennsylvania General Insurance Co.*, 68 N.Y.2d at 471, 502 N.E.2d at 985, 510 N.Y.S.2d at 70.

The court rejected the argument that, while Austin Powder was an additional insured, Bison Ford had actually paid the premiums. The court, however, noted the very likely possibility that Bison Ford's insurance costs were passed on to Austin Powder in the form of higher rental costs. The court then stated as follows:

"More importantly, the argument is unpersuasive because it ignores one of the primary considerations militating against allowing subrogation in these circumstances.

The rule against allowing subrogation claims against an insured is based, in part, on the potential for conflict of interest that is inherent in these situations [citations]. Here, for example, the interests of the insured indemnitor, Austin Powder, can only be fully protected through the vigorous defense of the indemnitee, Bison Ford. Yet, if indemnification from Austin Powder could be had for losses sustained on Bison Ford's behalf, Liberty Mutual would have less incentive to defend Bison Ford from claims made against it. As a consequence, allowing indemnification might sanction an indirect breach of the insured's obligation to defend its insured, Austin Powder. Furthermore, it would sanction a direct breach of the primary obligation the insurer undertook—the obligation to indemnify Austin Powder from loss. [Citation.]" *Pennsylvania General Insurance Co.*, 68 N.Y.2d at 471-72, 502 N.E.2d at 985-86, 510 N.Y.S.2d at 70-71.

See also *North Star Reinsurance Corp.*, 82 N.Y.2d at 295-96, 624 N.E.2d at 654, 604 N.Y.S.2d at 517 (potential conflict of interest arises where the insurer that issued policies to the contractor and the owner seeks indemnification against the contractor).

However, in *Benge*, the court held that the anti-subrogation rule did not apply where the defendant-insurer insured both parties but under separate policies, and the policy provided that, if the insurer paid the plaintiffs' losses, it would obtain the plaintiffs' rights to recover against a third party. The policy did not limit the transfer of rights to those against third parties not insured by the defendant-insurer. *Benge*, 297 Ill. App. 3d at 1071, 697 N.E.2d at 920.

The court recognized that the right to subrogation may arise at common law, by statute, or by contract. The court further noted that an unambiguous insurance policy should be enforced as written to the extent that it does not violate public policy. In analyzing the competing public policy considerations, the court stated as follows:

"We recognize that allowing an insurance carrier to subrogate against its own insured might create a conflict of interest in some situations. We do not believe, however, that the instant case is one of those situations. In this case, Convery [one of the plaintiffs] sustained $1,156.99 in damages and Benge sustained $600 in dam-

ages. It is clear that the limits of the at-fault insureds' liability coverage exceeded the plaintiffs' damages in both cases. Under these circumstances, no conflict of interest exists between the defendant and the at-fault insureds to prevent subrogation because the defendant would have no interest in suing the at-fault insureds merely to reimburse itself under the at-fault driver's liability coverage. A conflict of interest might arise where damages paid under the innocent insured's policy exceed the limits of the at-fault insured's policy coverage, giving the insurance carrier an interest in suing its own insured for the excess." *Benge*, 297 Ill. App. 3d at 1071, 697 N.E.2d at 920.

■ Unlike the situation in *Benge*, there is no indemnification agreement. Moreover, under the facts of the case before us, a conflict of interest does arise.

Here, the policy provides that, like Opus, Prairie would not be covered under the policy if it had other insurance covering the loss, which Prairie admitted it had. Chubb settled with its insured, Opus. Chubb then initiated the present action against its other insured, Prairie, because Prairie had additional insurance coverage. This presents a conflict of interest because it gives Chubb the incentive to pursue its own insured for a risk covered in the policy and for which Prairie has paid the premium, if perhaps indirectly.[2]

As we stated earlier, the goal of subrogation is to place the ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall. *Dix Mutual*, 149 Ill. 2d at 319, 597 N.E.2d at 624. In this case, Opus and Prairie were insured for the same risks under the same policy. Therefore, the loss in this case should fall on Chubb pursuant to its policy of insurance.

We conclude that Chubb's claim against the defendants was barred by the anti-subrogation rule.

## II. PUBLIC POLICY

Chubb contends that, if the anti-subrogation rule applies in this case, the effect would be that a subcontractor would never have to purchase its own insurance since the general contractor would be responsible for providing coverage for all of its subcontractors and that such effect is clearly violative of public policy.

While courts will not enforce an agreement that is contrary to public policy, a contract should not be deemed illegal unless it is

---

[2]Chubb argues that there is no proof that Prairie paid the premium to be an additional insured. However, we agree with the view of the court in *Pennsylvania General Insurance Co.* that the insurance costs were no doubt passed on to the additional insureds in the form of other costs.

expressly contrary to the law or public policy. *Cline*, 309 Ill. App. 3d at 506, 722 N.E.2d at 760. The laws and public policy of the State of Illinois permit freedom of contracting between competent parties. *Cline*, 309 Ill. App. 3d at 506, 722 N.E.2d at 760. In addition, construction of a contact that renders the agreement enforceable rather than void is preferred. *Cline*, 309 Ill. App. 3d at 507, 722 N.E.2d at 760. As a result, the issue as to whether a contract is contrary to public policy depends on the facts and circumstances of the case. *Cline*, 309 Ill. App. 3d at 507, 722 N.E.2d at 760.

Chubb maintains that there is no evidence that the defendants paid any premiums to obtain protection under the policy from the loss in this case. Chubb relies on the following language in *Cline*, wherein the court stated:

"It would be inequitable to allow the additional insured to avoid responsibility for its own conduct and seek full coverage when the insurer has not been compensated. This limitation on coverage recognizes that businesses in the construction industry carry coverage for liability arising out of their own work and assumes that Pepper would have its own general liability coverage. If an additional insured seeks the same level of coverage that it already receives from its own insurer, then insurers like plaintiff should receive a larger premium payment." *Cline*, 309 Ill. App. 3d at 509, 722 N.E.2d at 762.

Chubb's reliance on the above language from *Cline* is misplaced. In that case, while Pepper was named as an additional insured, the policy limited the coverage for additional insureds. The *Cline* court explained as follows:

"In the instant case, two sophisticated parties, Pepper and Hinsdale, exercised their freedom of contract and negotiated a subcontract. *** As part of the subcontract, Hinsdale was required to place Pepper and Anderson on its CGL [comprehensive general liability] policy as additional insureds. However, the certificate of insurance issued by plaintiff *** placed an onus on Pepper to ascertain the extent of coverage. [Citations.] Form AC 2030M modified the extent of coverage by stating that '[t]he coverage afforded to the Additional Insured is solely limited to liability specifically resulting from the conduct of the Named Insured which may be imputed to the Additional Insured.' ***

Therefore, since both Hinsdale and Pepper were sophisticated businesses that often executed subcontracts, it is reasonable for us to assume that any questions as to coverage could have been negotiated prior to execution of the subcontract. As a result, we find the endorsement does not violate the public policy of the State of Illinois and Pepper and Anderson were bound by its terms." *Cline*, 309 Ill. App. 3d at 511, 722 N.E.2d at 763-64.

In the present case, the defendants were additional insureds under the terms of the policy. Had the parties intended to limit the coverage for additional insureds, they clearly could have done so by modifying the policy. The fact that there is no evidence of an additional premium being paid for the coverage makes no difference. Unlike *Cline*, where Pepper was seeking additional coverage, not afforded by the policy, which would have required an additional premium, the coverage for the defendants in this case was provided by the terms of the policy.

Contrary to Chubb's argument, since the parties were free to restrict the insurance coverage by contract, applying the anti-subrogation rule in this case will not require general contractors to provide insurance in every case to subcontractors and therefore does not violate public policy.

We conclude that applying the anti-subrogation rule in this case does not violate public policy.

As summary judgment was properly entered for the defendants in this case based upon the anti-subrogation rule, we need not address whether Chubb's right to subrogation was waived by the language on the delivery tickets.

The judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN, P.J., and KARNEZIS, J., concur.