(No. 19030.—

JAMES H. HOOPER, Appellant, *vs.* PHILIP GOLDSTEIN *et al.* Appellees.

*Opinion filed June 19, 1929—Rehearing denied October 9, 1929.*

126

Harold O. Mulks, for appellant.

Sherman C. Spitzer, Everett M. Swain, and Cassius A. Scranton, (Charles L. Bartlett, of counsel,) for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

On December 2, 1920, appellant, James H. Hooper, began an action of ejectment in the circuit court of Cook county against Philip Goldstein and Belle Finkelstein. On October 7, 1927, the suit was dismissed as to Belle Finkelstein, and Ole Thorson, Clara Thorson and nine others were made defendants. There was a trial by the court, a finding and judgment in favor of appellees, and an appeal has been prosecuted to this court.

On November 1, 1915, Michael J. Howard and Anna M. Howard, his wife, were the owners of two vacant lots at the corner of Wilson and Monticello avenues, in Chicago. On that day they executed a trust deed to the Chicago Title and Trust Company, as trustee, to secure $27,000, which was used to erect a twelve-apartment building upon the premises. On November 11, 1915, they executed a second trust deed to Elliott R. Goldsmith, as trustee, to secure $3750. Default was made in the payment of the second trust deed, and on July 12, 1916, Goldsmith filed a bill to foreclose it. A decree of sale was entered on February 17, 1917, and the master in chancery sold the property on March 21, 1917, to Goldsmith, a certificate of sale was issued and a duplicate was filed for record. Appellees claim that Goldsmith did not have the money to pay the master's fees, amounting to $238, and the master held as security therefor the original certificate, with an assignment thereof to him by Goldsmith, which assignment was on a separate piece of paper and was attached to the certificate by mucilage. There is some uncertainty in the evidence as to the date of the first assignment to the master and as to the amount it secured. The master testified that Goldsmith owed him a total of $753 for fees due and money advanced; that on October 19, 1917, Goldsmith asked for a loan of $525; that the master did not have that amount and he obtained $200 from Robert H. Bieg, who was a clerk in the

master's office, and the money was paid to Goldsmith. The master decided that he could not issue a deed to himself for the property in case it was not redeemed, so he had Goldsmith make another assignment of the certificate to Bieg, which assignment was on a separate sheet of paper and was attached to the certificate and was made October 19, 1917. On August 3, 1918, a bill was filed in the superior court of Cook county praying for a partial foreclosure of the first trust deed to make the amount due on defaulted interest coupons, and a receiver was appointed to take possession of the property. No redemption was made under the sale on the second trust deed, and on January 27, 1919, the master executed a deed to Bieg. On January 27, 1919, Bieg and wife conveyed to Richard F. Ott, who on February 8, 1919, caused the foreclosure proceeding on the first trust deed to be dismissed and the receiver discharged. On March 1, 1919, Ott and wife conveyed to Charles E. Schick. On June 18, 1920, Schick and wife conveyed to Philip Goldstein and Belle Finkelstein. On January 22, 1921, Finkelstein and Goldstein paid off the first trust deed of $27,000. On September 13, 1921, Finkelstein conveyed her interest to Goldstein. Appellees' chain of title then passed through nine parties until it finally vested on August 5, 1927, in appellees Ole Thorson and Clara Thorson. The deed from Goldstein to Cohen and the deed from Cohen to Phillips were executed and recorded in April, 1922, eight months before Goldstein was served in the ejectment case. These various conveyances and proceedings constitute the chain under which appellees claim title.

The chain of title claimed by appellant is as follows: On April 13, 1917, Michael J. Howard and Anna M. Howard, his wife, after the foreclosure sale conveyed their equity of redemption in the property to Goldsmith, in whose name the certificate of sale was issued. On December 22, 1917, Goldsmith conveyed to James C. Fletcher. Fletcher conveyed to Arthur Fitzpatrick on December 26, 1917.

Fitzpatrick conveyed to Harry E. A. Olson on March 8, 1918. Olson and wife on March 16, 1918, conveyed to Ada M. Wise, who was a sister of appellant, James H. Hooper. On April 4, 1918, Goldsmith went to the master's office and told Bieg he wanted to get the duplicate certificate of sale and take it to the office of the Chicago Title and Trust Company. Bieg delivered to him the certificate and took his written receipt therefor. This duplicate was never returned to the master. Goldsmith, under an assignment alleged to have been made on March 11, 1918, assigned the duplicate certificate to Fitzpatrick, who had received a deed for the premises on December 26, 1917. Fitzpatrick, under an assignment alleged to have been made on March 12, 1918, assigned the certificate to Olson, who had received a deed for the property from Fitzpatrick on March 8, 1918. These three assignments were supposed to have been made in March, 1918, but the receipt of Goldsmith to Bieg for the duplicate certificate is dated April 4, 1918. The dates of these three assignments cannot be correct, because they were before the duplicate certificate left the master's office. They were made on separate sheets attached to the duplicate certificate. On May 17, 1918, Olson executed a purported assignment of the certificate to Hooper, which assignment was attached to the certificate. On May 25, 1918, Ada M. Wise executed a quit-claim deed to Andrew Camarota. On May 25, 1918, Camarota quit-claimed to appellant. Appellant testified that he was in possession of the premises from May to August, 1918, when he was dispossessed by the receiver who was appointed when the bill to foreclose the first trust deed was filed.

The contention of appellant is that the master's deed to Bieg was void; that when the Howards conveyed to Goldsmith, in whose name the certificate of sale had been issued, there was a merger and the certificate of sale was, in effect, destroyed; that the assignment of the certificate from Goldsmith to Bieg was void because the assignment was by

a separate instrument attached to the certificate and was not on the certificate itself; also because Goldsmith had previously executed an assignment to the master, and therefore the deed from the master to Bieg, who is alleged to have been a stranger, was void; that the assignment from Goldsmith to Bieg, not having been recorded, was void as to appellant and his predecessors in title; and that the title of Bieg and his subsequent grantees was that of a mortgagee.

Appellees contend that the foreclosure decree, the sale to Goldsmith and the assignment of the certificate from Goldsmith to Bieg were valid; that the master's deed was properly issued to Bieg, and that appellees the Thorsons are now vested with the fee simple title by a connected chain of title from Bieg; that the claim of appellant that the title of appellees is that of a mortgagee cannot be sustained in an action of ejectment; that as to appellees the Thorsons and their tenants the action of ejectment was not commenced until October 7, 1927, and that they have a good limitation title, which was a complete defense to the action.

Section 16 of chapter 77 of our statutes (Cahill's Stat. 1927, p. 1541,) provides that when real estate is sold under foreclosure it shall be the duty of the master to issue to the purchaser a certificate describing the premises purchased, showing the amount paid or bid and the time when the purchaser will be entitled to a deed. Section 17 provides that the master, within ten days of the sale, shall file in the office of the recorder a duplicate of such certificate, which shall be recorded, and that such duplicate shall be evidence of the facts therein stated. Section 18 gives the right to any defendant, his heirs, administrators and assigns, or any person interested in the premises through or under the defendant, twelve months from the sale in which to redeem. If such redemption is not made, section 20 provides that any decree or judgment creditor, his executors, administrators or assigns, may, after the expiration of twelve months and within fifteen months after the sale,

redeem in the manner therein prescribed. Section 23 provides for successive redemptions by creditors. Section 29 provides that every such certificate given to any purchaser shall be assignable by endorsement thereon under the hand of such purchaser, and every person to whom the same shall be assigned shall be entitled to the same benefits therefrom which the person therein named had if the same had not been assigned. Section 30 provides that when the premises are not redeemed the legal holder of such certificate shall be entitled to a deed at any time within five years from the expiration of the time of redemption. Section 32 provides that such deed shall convey to the grantee therein all the title, estate and interest in and to the premises thereby conveyed. Section 33 provides that any deed so executed, or a certified copy of the record thereof, shall be *prima facie* evidence that the provisions of the law in relation to the sale of the property for which it is given were complied with, and in case of the loss or destruction of the record of the judgment or decree, or of the execution or levy thereon, such deed or certified copy of the record thereof shall be *prima facie* evidence of the recovery and existence of the judgment or decree and the issuing and levying of the execution as therein recited.

This is an action of ejectment. The legal title, only, was involved. The court was without jurisdiction to adjust equities or to grant equitable relief. If appellant recovers it must be on the strength of his legal title and not upon the weakness of the title of appellees. (*Hooper* v. *Finlay,* 331 Ill. 132.) The title of appellees was based on the foreclosure proceedings and the master's deed to Bieg, which recited that the original certificate of sale had been assigned to Bieg. This recital was *prima facie* evidence of the assignment. (*Gardner* v. *Eberhart,* 82 Ill. 316; *Stephenson* v. *Thompson,* 13 id. 186; *Wiley* v. *Bean,* 1 Gilm. 302.) In order to sustain their claim of title appellees introduced in evidence the bill, the summons and return thereon, the

foreclosure decree, the report of sale and the master's deed. These documents, standing alone, under section 33 of the statute were sufficient to prove title in appellees in the first instance. (*Morey* v. *Brown,* 305 Ill. 284; *Livingston* v. *Moore,* 252 id. 447.) In *Osgood* v. *Blackmore,* 59 Ill. 261, it was held that where a plaintiff in an ejectment suit seeks to recover land against the defendant in the execution, or when it becomes necessary to rely on a sheriff's deed as a link in his chain of title, he is only required to produce the judgment, an execution thereon, and the sheriff's deed for the premises. The title of appellant was based upon the quit-claim deed from the Howards and *mesne* conveyances to appellant. The various assignments of the duplicate certificate of sale and the recording of those assignments added nothing to the strength of appellant's title. Section 29 of the statute provides for the assignment of the original certificate, but it does not provide for the assignment of the duplicate certificate. The duplicate certificate in this case was marked on the back as a duplicate. A line had been drawn through the word "duplicate," but this did not change it from a duplicate to an original certificate, and its assignment and recording did not add anything to appellant's claim of title.

There is no merit in the contention that when the Howards conveyed to Goldsmith, in whose name the certificate of sale was issued, there was a merger and the certificate of sale was in effect destroyed. A merger takes place when a greater estate and a lesser meet in one and the same person, in one and the same right, without any intermediate estate. The lesser estate thereby merges in the greater. But a merger is not a necessary result of the union of the two estates in the same person. The intention and interest of the party who unites the two estates in himself will determine whether or not a merger takes place. To effect a merger at law, the right previously held and the right subsequently acquired must coalesce in the same person

and in the same right, without any other right intervening. (2 Jones on Mortgages, (7th ed.) 364, 368; *Richardson* v. *Hockenhull,* 85 Ill. 124; *Huebsch* v. *Scheel,* 81 id. 281; *Edgerton* v. *Young,* 43 id. 464; *Campbell* v. *Carter,* 14 id. 286.) Sections 20 and 23 of the statute provide for redemption by creditors. It has been held in many cases that this statutory right to redeem, as far as creditors are concerned, can be destroyed only by redemption in the manner pointed out by the statute, and even though the certificate of sale and the equity of redemption become vested in the same person, there is no merger and the certificate of sale is not thereby destroyed and the right of redemption still continues. (*Williams* v. *Williston,* 315 Ill. 178; *Keller* v. *Coman,* 162 id. 117; *Boynton* v. *Pierce,* 151 id. 197; *Shroeder* v. *Bauer,* 140 id. 135; *Moore* v. *Hopkins,* 93 id. 505; *Chiles* v. *Davis,* 58 id. 411.) The question of the right of judgment creditors to redeem is not involved in this case. These cases are cited to show that a merger does not always follow the vesting of two estates in the same person. The evidence in this case does not establish a merger.

Section 29 of the statute provides for the assignment of the original certificate by indorsement thereon and that every assignee shall be entitled to the same benefits which the original owner had before the assignment. There was no compliance with this provision of the statute. The assignment was not indorsed on the certificate but was on a separate paper attached to the certificate. Even a defective assignment and one not in compliance with the statute may be sufficient to vest rights in the assignee. In *Chytraus* v. *Smith,* 141 Ill. 231, the certificate of sale had been delivered to Chytraus accompanied by an assignment in writing on a separate instrument. Smith claimed the same certificate under a contract of sale to him, which contract was embodied in certain letters between Smith and the owner of the certificate which antedated the assignment to Chytraus.

Neither of these assignments was in compliance with the statute. It was held that Chytraus took the equitable title to the certificate subject to equities, and that the equity of Smith, being prior in time, must prevail over the equitable rights of Chytraus, and that Smith was entitled to the certificate of sale. In *McClure* v. *Engelhardt,* 17 Ill. 47, it was held that title might well pass under such a defective assignment as would not enable the holder to compel the officer to execute a deed, yet he might do so and it would be good. In the case at bar Goldsmith assigned the certificate to Bieg, the master's deed recited the assignment, and this was sufficient to establish a *prima facie* assignment.

Appellant contends that the first assignment of the certificate from Goldsmith was to the master and that there is no evidence that the master assigned to Bieg. As we before stated, there is considerable uncertainty in the evidence as to just when the first assignment to the master was made. It is apparent from the evidence that such an assignment was made. The master testified that he held the certificate and its assignment as security for fees due him and money paid. Appellant contends that there is no evidence of any assignment prior to October 19, 1917. It is conceded that there was an assignment on this last date to Bieg. The assignment to the master was canceled by the master and Goldsmith thereupon executed the assignment to Bieg. Goldsmith was in no position to deny the validity of his assignment or to claim that there was a merger of the certificate with his deed of conveyance from the Howards. By his assignment he did not treat the certificate as having been merged in the deed but he assigned it to Bieg as security for money borrowed and for fees due. By this act he created an intermediate estate, which prevented a merger. He created an intermediate estate whether it was his intention to do so or not. The master not only consented to the assignment to Bieg but in his deed he recited such assignment, therefore the master was in no position

to claim that there was no assignment from him to Bieg. In *Sanford* v. *Finkle*, 112 Ill. 146, Sanford conveyed by deed to Finkle, his son-in-law. Finkle returned the deed to Sanford and directed Sanford to convey to Mrs. Finkle. It was held that by this transaction Mrs. Finkle became possessed of the equitable title to the property, which a court of equity would protect. To the same effect is *Crossman* v. *Keister*, 223 Ill. 69. Bieg by his assignment acquired the equitable title to the certificate. This was sufficient to justify the conveyance from the master to him, and when the master made the deed, under section 32 of the statute it conveyed all of the title, legal and equitable, possessed by all of the parties to the foreclosure. *Springer* v. *Darlington*, 198 Ill. 121.

Appellant contends that the assignment from Goldsmith to Bieg was void as to appellant because the assignment was not recorded. Section 17 of the statute provides that the duplicate certificate shall be recorded, but it makes no provision for the recording of the original certificate or of an assignment thereof. The purchaser at a master's sale, or his assignee, acquires no title to the land, either legal or equitable. (*Strauss* v. *Tuckhorn*, 200 Ill. 75.) He, however, does acquire the alternative right to receive the redemption money if the property is redeemed, or in case there is no redemption he has the right to receive a master's deed. (*Williams* v. *Williston, supra; Sutherland* v. *Long*, 273 Ill. 309.) Goldsmith assigned the certificate to Bieg more than two months before Goldsmith conveyed the title to Fletcher. The assignee of a certificate takes the interest subject to prior equities in the certificate, if there are any. In *Bruschke* v. *Wright*, 166 Ill. 183, prior to the assignment the guardian of certain minors who were owners of the equity of redemption entered into an agreement whereby it was agreed that in case there was no redemption there should be paid to the guardian, for the benefit of the minors, a certain sum of money. This agreement was not

recorded and the assignee of the certificate had no knowledge of these negotiations. It was held that the rights of the assignee were subject to the equities of the minors, which should be protected. The equities of Bieg in the assignment of the certificate being prior in time to the conveyance to Fletcher, were superior to the rights which were acquired by Fletcher and his grantees.

Appellant contends that the assignment of the certificate from Goldsmith to Bieg, although absolute in form, was in fact a mortgage, and when Bieg procured the master's deed the interest which Bieg acquired was the same as if Bieg had acquired such interest by a deed absolute in form which was in fact a mortgage. Proof that a deed, although absolute in form, is in fact made to secure a debt is not an issue which can be raised in an action of ejectment, and therefore proof tending to show that fact was incompetent. *McGinnis* v. *Fernandes,* 126 Ill. 228; *Ladd* v. *Ladd,* 252 id. 43; *Hooper* v. *Finlay, supra.*

Cross-errors have been assigned on the ruling of the court in sustaining the demurrer to special pleas of appellees and on the admission of incompetent evidence, but it will not be necessary to consider these questions.

The evidence not only fails to show that appellant was the holder of the legal title, but it shows that appellees are the holders of the legal title. There may be equities on each side which a court of equity might adjudicate, but in an action of ejectment, where only the legal title is involved, the court properly rendered judgment in favor of appellees, and it will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*