EDWARD F. NAPLETON, Plaintiff-Appellee, v. RAY BUICK, INC., Defendant-Appellant.

First District (5th Division) No. 1—98—0747

Opinion filed December 11, 1998.—Rehearing denied January 7, 1999.

Donald B. Garvey, of Garvey & Associates, Ltd., of Oak Brook, for appellant.

William R. Quinlan, Caesar A. Tabet, and Michael I. Rothstein, all of Quinlan & Crisham, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Edward F. Napleton sought a declaratory judgment establishing his rights regarding an option to purchase certain real estate that he leased from defendant Ray Buick, Inc. The circuit court granted summary judgment in plaintiff's favor, determining that plaintiff properly exercised the option and that the lease and any unexercised options to extend the lease must be considered in applying the formula to establish the purchase price of the real estate. Defendant now appeals.

For the reasons that follow, we affirm.

On November 26, 1996, plaintiff filed a declaratory judgment action alleging that in July 1975 defendant owned certain real property commonly known as 6550 West 95th Street in Oak Lawn. Plaintiff alleged that defendant leased the property to La Salle National Bank, as trustee, and that the lease contained an option to purchase at any time after the tenth lease year upon the lessee giving 90 days' prior written notice of its election to exercise the option. Plaintiff alleged that, under the lease, if the lessee elected to purchase the property, the purchase price would be the appraised value of the property exclusive of the value of certain improvements as determined by appraisers selected and qualified pursuant to the lease.

The complaint further alleged that plaintiff purchased the leasehold interest in the property and on September 25, 1996, plaintiff sent a letter notifying defendant that he exercised the option to purchase. Plaintiff also notified defendant that he had appointed an appraiser for the purposes of determining the purchase price. Plaintiff alleged that defendant failed to appoint an appraiser within a reasonable time.

In count I, plaintiff asked the court to declare that defendant waived its right to appoint an appraiser, and in count II, plaintiff asked the court to declare that defendant is estopped from appointing an appraiser. In count III, plaintiff alleged that defendant agreed to sell the real estate to plaintiff for the "appraised value," which plaintiff alleged was the fair market value of the real estate, "including all encumbrances." Plaintiff asked the court to declare that the fair market value should take into account the ground lease and all other encumbrances.

The ground lease agreement contains the following relevant provisions:

"ARTICLE I
DEMISED PREMISES
* * *

The Land together with the rights, privileges and easements thereunto belonging or in anywise thereunto appertaining, is hereinafter collectively referred to as the 'Demised Premises'.
* * *

ARTICLE II
PRIMARY TERM AND RENEWAL TERMS
* * *

Section 3. Lessee shall have three (3) options to extend the primary term for three successive periods of five (5) years each; each of which said options to extend shall be exercised by Lessee giving to Lessor written notice of Lessee's election so to do not less than one hundred eighty (180) calendar days prior to the expiration of the primary term, or the then current renewal term, as the case may be. All provisions of this lease applicable to the primary term shall apply to each of the renewal terms.
* * *

ARTICLE IV
BASIC RENT
Section 1. Lessee covenants and agrees to pay Lessor *** installments of rent (hereinafter called 'Basic Rent') as follows:
* * *

C. During each lease year of each of the following 5-year periods, [after the initial ten years,] *** Lessee shall pay to Lessor annual

rent, in an amount equal to Ten percent (10%) of the appraised value of the Demised Premises (exclusive of the value of all Improvements) determined immediately prior to the commencement of each such 5-year period in accordance with the provisions of Section 2 of this Article IV ***.

\* \* \*

*Section 2.* The appraised value of the Demised Premises shall be determined jointly by an appraiser appointed by Lessor and an appraiser appointed by Lessee. Said appraisers shall be appointed by Lessor and Lessee respectively not less than one hundred twenty (120) days prior to the date upon which the next basic rent adjustment is to become effective.

\* \* \*

## ARTICLE XIII
## OPTION TO PURCHASE

*Section 1.* Lessee shall have, and Lessor hereby gives and grants to Lessee, the right and option to purchase the Demised Premises at any time after the tenth lease year, by giving to Lessor ninety (90) days prior written notice of Lessee's election so to do. If Lessee shall elect to purchase the Demised Premises as aforesaid, the purchase price of the Demised Premises (exclusive of the value of the Improvements) shall be determined by the joint appraisal of appraisers selected and qualified as in Section 2 of Article IV provided with respect to determination of the adjusted Basic Rent, or by a sole appraiser likewise selected and qualified as in Section 2 of Article IV provided.

*Section 2.* The purchase and sale of the Demised Premises· shall be consummated within the sixty (60) days next following the date of determination of the purchase price, by the delivery of Lessor's deed and the payment by Lessee of the purchase price. Title to the Demised Premises shall be conveyed to Lessee (or the nominee designated by Lessee in written notice to Lessor) by a good and sufficient general warranty deed, subject to no matters other than those to which the Demised Premises was subject at the time of commencement of the term of the Lease, then current general real estate taxes, and installments of special assessments levied or.assessed after the date of commencement of the term of this Lease and to matters done or suffered to be done by Lessee or those claiming by, through or under Lessee.

\* \* \*

## ARTICLE XXVI
## MISCELLANEOUS
\* \* \*

*Section 4.* If the Lessee shall acquire and become the owner of the fee simple title and estate in and to the Land and the premises

leased and let to Lessee pursuant to the provisions of this Lease, there shall be no merger of the leasehold estate in and with the fee simple title and this Lease and the leasehold created hereby shall continue in full force and effect until Lessee shall have filed for record in the Office of the Recorder of Deeds a written instrument duly executed by Lessee, reciting that Lessee has acquired the fee simple title in and to the Land and the premises leased and let pursuant to this Lease, and declaring that Lessee has elected that the leasehold estate created by this Lease be and the same is, effective upon the filing of such written instrument, merged in the fee simple title to the Land and that this Lease is thereupon null and void of no further force or effect."

The September 25 letter to defendant stated: "This letter shall constitute notice, pursuant to Article 13, Section 1 of the Lease, that [plaintiff] is hereby exercising his option to purchase the Demised Premises." The letter further identified an individual plaintiff appointed as an appraiser for the purpose of determining the purchase price.

Defendant moved to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)). Defendant alleged that the claim was barred because plaintiff failed to properly exercise the option to purchase the property. An affidavit attached to the motion by Ray L. Gieselmann, president of Ray Buick, Inc., stated that defendant first received notice regarding the option to purchase the leased property dated September 25, 1996. However, defendant received no other written communication regarding the option to purchase prior to the date plaintiff filed this suit.

On April 23, 1997, the court entered an order finding that plaintiff properly exercised the option to purchase the property. The court dismissed counts I and II, finding that there was no actual controversy alleged in those counts.

Defendant then filed its answer as to count III and both parties moved for summary judgment. Defendant attached several affidavits suggesting that the contracting parties actually intended that the lease not be included in the consideration of the purchase price. The circuit court granted summary judgment in favor of plaintiff, declaring that the purchase price must take into account the ground lease and all other encumbrances on the property. Defendant moved to vacate or modify the judgment order. The court denied defendant's requests, but made a slight modification to the order.

Defendant appealed from the orders ruling on its motion to dismiss "insofar as [they] held that Plaintiff *** properly exercised the option to purchase the premises *** and denied Defendant's Motion to

Dismiss Count III of Plaintiff's Complaint." Defendant also appealed from the order granting summary judgment to plaintiff and the orders denying defendant's motions to vacate or modify. Defendant asks this court to reverse the denial of his motion to dismiss count III or, in the alternative, reverse the order granting summary judgment to plaintiff and rule that the ground lease and options to renew not be included when determining the purchase price.

Defendant first argues that the circuit court erred in failing to dismiss all three of the counts of the complaint pursuant to a section 2—619 motion (735 ILCS 5/2—619 (West 1996)) because plaintiff failed to properly exercise the option to purchase the real estate. Plaintiff contends that this court lacks jurisdiction to consider this question because the orders that defendant contests were actually entered in its favor. The circuit court found that plaintiff properly exercised the option and granted the motion to dismiss counts I and II. The court denied defendant's motion to dismiss count III. Defendant contends this court may review this issue because it appealed from the orders insofar as they held that plaintiff properly exercised the option to purchase the premises and denied defendant's motion to dismiss count III. We need not resolve this dispute, however, because we hold that even if we review this issue, there is no basis for reversal.

The lease agreement provided that the lessee had an option to purchase "the Demised Premises at any time after the tenth lease year, by giving to Lessor ninety (90) days prior written notice of Lessee's election so to do." On September 25, 1996, plaintiff's attorney sent a letter to defendant advising that plaintiff was the lessee and stating that the letter "shall constitute notice, pursuant to Article 13, Section 1 of the Lease, that [plaintiff] is hereby exercising his option to purchase the Demised Premises."

Defendant admits receiving the letter, but contends plaintiff did not properly exercise the option by sending this letter because defendant did not receive any further written communication from plaintiff until the lawsuit was filed, which was before 90 days had passed. Defendant reminds the court that an option to purchase "must be exercised in strict accordance with its terms." *Chapman v. Brokaw*, 225 Ill. App. 3d 662, 666 (1992), citing *Department of Public Works & Buildings v. Halls*, 35 Ill. 2d 283 (1966).

■ We agree with the circuit court that plaintiff properly exercised the option. The lease agreement only required that plaintiff give 90 days' notice. Plaintiff sent a letter indicating such notice and appointing an appraiser. Plaintiff then proceeded as if the purchase would be completed within 90 days. When defendant did not appoint its appraiser, plaintiff filed suit for a declaratory judgment. Defendant never

received a letter revoking or otherwise striking the expression of intent to purchase the real estate and when 90 days arrived on December 24, 1996, plaintiff continued to proceed with the intent to purchase the property. We see no violation of the option's terms.

Defendant next argues that the circuit court erred in granting summary judgment in favor of plaintiff on the issues regarding the calculation of the purchase price of the real estate. Defendant maintains that neither the ground lease nor the extensions to that lease should be considered when the appraisers calculate the purchase price. Plaintiff contends, however, that these items are encumbrances on the property that must be considered.

■ In reviewing a motion for summary judgment, the court determines whether the movant is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). This court reviews such matters *de novo. Outboard Marine*, 154 Ill. 2d at 102.

Defendant maintains that under Illinois law the lease was extinguished when plaintiff exercised the option to purchase and therefore it cannot be an encumbrance on the property and should not be considered in calculating the purchase price.

In *Cities Service Oil Co. v. Viering*, 404 Ill. 538, 540 (1949), the plaintiff alleged that the defendant leased property to the plaintiff with an option of purchasing the property at any time during the term of the lease. The plaintiff exercised the option, but the defendant refused to convey the property. *Cities*, 404 Ill. at 540-41. The trial court entered a decree for the plaintiff. *Cities*, 404 Ill. at 543. The defendant objected in part because the decree did not require payment of rent from the plaintiff until the date of delivery of the deed and payment of the purchase price. This court stated:

"Where the relation of landlord and tenant exists under the terms of a written lease, containing an option to purchase which the lessee exercises, he is no longer in possession as a tenant, but his possession is that of a vendee. [Citations.] The lessor is not entitled to rent after the option to purchase is exercised unless there is in the lease an express stipulation therefor. [Citation.] *The exercise of the option extinguishes the lease and terminates the relation of landlord and tenant.* The lease and all its incidents, express and implied, *are blotted out of existence*, and the relation of vendor and vendee created." (Emphasis added.) *Cities*, 404 Ill. at 554.

The *Cities* court determined that when the plaintiff exercised its option to purchase by notice served on the defendant, a complete and absolute contract was created binding upon the plaintiff to buy and the defendant to sell, thereby vesting the equitable ownership of the

property in the plaintiff. The relation of landlord and tenant then ceased to exist. *Cities*, 404 Ill. at 555.

In *Artful Dodger Pub, Inc. v. Koch*, 230 Ill. App. 3d 806 (1992), a tenant exercised an option to purchase leased property. On cross-appeal, plaintiff argued that the trial court erred in denying its motion for replevin of all rents which defendant collected since the time it exercised the option. *Artful Dodger*, 230 Ill. App. 3d at 811. The court stated:

> "Upon exercise of the option, the former relationship of lessor and lessee terminates and the parties occupy the relationship of vendor and vendee. [Citation.] Thereafter, the land is regarded, in equity, as the property of the vendee subject to the rights of the vendor under the contract, and the lessor is not entitled to rent thereafter unless the lease expressly so provides." *Artful Dodger*, 230 Ill. App. 3d at 811.

The court concluded that the plaintiff was entitled to an accounting and replevin. *Artful Dodger*, 230 Ill. App. 3d at 811.

■ There are two essential distinctions between this line of cases and the case at hand. First, the cases allow for an exception to the rule that the lease terminates when a tenant exercises an option to purchase if the contract provides otherwise. See *Cities*, 404 Ill. at 554 (lessor not entitled to rent after exercise of option "unless there is in the lease an express stipulation therefor"); *Artful Dodger*, 230 Ill. App. 3d at 811 (lessor not entitled to rent after exercise of option "unless the lease expressly so provides").

In the instant case, the contract specifically states that the lease shall continue after the purchase. Article XXVI, section 4, of the lease agreement provides that, if the lessee acquires and becomes the owner of the fee simple title to the land:

> "[T]here shall be no merger of the leasehold estate in and with the fee simple title and this Lease and the leasehold created hereby shall continue in full force and effect until Lessee shall have filed for record in the Office of the Recorder of Deeds a written instrument duly executed by Lessee, reciting that Lessee has acquired the fee simple title in and to the Land and the premises leased and let pursuant to this Lease, and declaring that Lessee has elected that the leasehold estate created by this Lease be and the same is, effective upon the filing of such written instrument, merged in the fee simple title to the Land and that this Lease is thereupon null and void of no further force or effect." (Emphasis added.)

Secondly, the cases cited are recognizing a change in the relationship of the parties based on equitable principles for the purposes of determining the obligation to pay rent. This case does not involve a question of rent obligations and plaintiff does not argue that his lessor/

lessee relationship with defendant is continuing. We do not find these cases controlling as to the question of whether the lease and its options to renew are considered in the appraised value of the property when a tenant exercises an option to purchase.

Defendant also contends that the doctrine of merger applies to merge the leasehold with the fee estate when plaintiff exercised the option to purchase. In *Hooper v. Goldstein*, 336 Ill. 125 (1929), the supreme court stated:

> "A merger takes place when a greater estate and a lesser meet in one and the same person, in one and the same right, without any intermediate estate. The lesser estate thereby merges in the greater. But a merger is not a necessary result of the union of the two estates in the same person. The intention and interest of the party who unites the two estates in himself will determine whether or not a merger takes place." *Hooper*, 336 Ill. at 132.

■ Defendant contends that this flexible application of the doctrine of merger was superseded by the ruling in *Cities* in which the court stated that the lease is extinguished when the lessee exercises an option to purchase. We note that *Cities* did not address the application of the merger doctrine. That case addressed the obligation to pay rent after the option to purchase had been exercised. Further, case law decided after *Cities* indicates that the intent of the parties is still relevant to the application of merger. See *Miller v. McDonough*, 13 Ill. App. 2d 290, 294 (1957), quoting *Hooper*, 336 Ill. at 132.

In *Daniels v. Anderson*, 162 Ill. 2d 47 (1994), a party argued that the doctrine of merger by deed barred a claim to a contractual easement because that easement merged with the deed when the landowner accepted the deed to the property. The court stated:

> "Under the doctrine of merger by deed, if the terms of a real estate contract are fulfilled by delivery of the deed, the two instruments merge. Unless the deed contains a reservation, the deed supersedes all contract provisions and becomes the only binding instrument between the parties. However, where there are contract provisions which delivery of the deed does not fulfill, the contract remains in force until it has been fully performed. ***
>
> Whether and to what extent the contract merges into the deed is a matter of the parties' intent that the deed constitutes a full performance of the contract. This intent is evidenced by the language of the instruments and the surrounding circumstances." *Daniels*, 162 Ill. 2d at 63-64.

The court held that, because the deed did not mention the prior contractual easement, the doctrine of merger did not apply and the easement remained in force despite acceptance of the deed.

Although it was applying the doctrine of merger in the context of

a real estate contract and conveyance of a deed, the supreme court's decision in *Daniels* indicates that the doctrine of merger is not as automatic and inflexible as defendant contends. The contract in this case specifically stated that merger would not apply and we reject defendant's assertion that the doctrine must apply whenever a tenant exercises an option to purchase.

Plaintiff cites case law from Florida and Arizona involving similar situations to the case at hand. In *TCC Enterprises v. Estate of Erney*, 149 Ariz. 257, 257, 717 P.2d 936, 936 (App. 1986), a lessee attempted to exercise an option to purchase that called for payment of "current market value." The lessee argued that the value of the property should reflect the value of the lease encumbrance; the lessor was not in a position to sell unencumbered fee simple because the fee was encumbered by the lease. *TCC*, 149 Ariz. at 257-58, 717 P.2d at 936-37. The court recognized that the estate the lessor owned was a "leased-fee estate" and ruled that the current market value should consider the lease. *TCC*, 149 Ariz. at 258, 717 P.2d at 937.

In *Contos v. Lipsky*, 433 So. 2d 1242 (Fla. App. 1983), lessors brought suit to obtain a judgment declaring that the true market value of the property subject to an option to purchase was its value unencumbered by the years remaining on the lease. The court addressed the question of merger, stating "the once inflexible common law rule—that is, that whenever a greater estate and a lesser estate coincide in the same person without any intermediate estate, the lesser estate merges into the greater—has given way to the rule that equity will prevent or permit a merger as will best serve the purpose of justice and the actual and just intent of the parties, whether express or implied." *Contos*, 433 So. 2d at 1244. The court affirmed the lower court's ruling declaring that the true market value of the property was its value encumbered by the years remaining on the lease because it found no evidence of intent for the leasehold estate to merge into the fee when the lessee exercised her option.

A dissenting judge in *Contos* disagreed with the conclusion, stating that the court should look to the language of the parties' agreement, which the judge believed suggested that the value of the property should not include the lease at the time of purchase. *Contos*, 433 So. 2d at 1247-48 (Schwartz, C.J., dissenting). Other Florida cases since *Contos* have followed the reasoning of the dissent and found that a lease should not be included in the purchase price when the language of the agreement suggested that the property should be valued unencumbered. See *Lassiter v. Kaufman*, 581 So. 2d 147 (Fla. 1991); *Palm Pavilion v. Thompson*, 458 So. 2d 893 (Fla. App. 1984); see also *Taylor v. Fusco Management Co.*, 593 So. 2d 1045, 1047 (Fla. 1992)

(absent specific language to the contrary, the market value of leased property at the time a lessee exercises an option to purchase should be computed as if the property were unencumbered by the lease; any intent to value the property otherwise should be clearly stated in the lease).

In the instant case, the lease agreement clearly indicates that the parties did not intend for the leasehold to merge with the fee when the lessee exercised the option to purchase. The contract specifically precludes that. We therefore reject defendant's arguments that the lease and the options to renew are extinguished as a matter of law.

Even if the lease in this case did not contain the provision specifically addressing the issue of merger, we believe that a court must look to the terms of the parties' agreement to determine whether a lease is included in the calculation of the appraised value of the property when a tenant exercises an option to purchase. This leads us to the essential question in this case as to whether the lease and the options to renew must be considered by the appraisers in calculating the purchase price of the property under the terms of the parties' agreement.

■ A lease agreement is a type of contract governed generally by the rules of contract law. *Midland Management Co. v. Helgason*, 158 Ill. 2d 98, 103 (1994). A court's function in construing a lease is to give effect to the intentions of the parties as expressed in the language of the document when read as a whole. *Midland*, 158 Ill. 2d at 104. If the language of a contract is unambiguous, the intention of the parties must be ascertained by the language used, not by constructions urged by the parties. *MXL Industries, Inc. v. Mulder*, 252 Ill. App. 3d 18, 29 (1993). A court cannot construe the contract contrary to the plain and obvious meaning of the language and it is presumed that the terms and conditions are purposefully inserted. *MXL*, 252 Ill. App. 3d at 29.

■ The lease agreement provides that if the lessee elects to purchase the property "the purchase price of the Demised Premises (exclusive of the value of the Improvements)" shall be determined by appraisers. While this section clearly exempts the value of improvements from consideration, the agreement does not expressly state what the appraisers should consider in determining the purchase price of the "Demised Premises." While the lease does not provide a direct statement as to what should be included, we believe the plain language of the contract as a whole unambiguously states that the lease and the options to purchase should be included in the calculation of the purchase price.

"Demised Premises" is defined in the agreement as "[t]he Land together with the rights, privileges and easements thereunto belong-

ing or in anywise thereunto appertaining." This language suggests that any encumbrance to the property would be considered a part of the "Demised Premises." The fact that the agreement specifically excludes improvements also suggests that every other interest or covenant should be included.

Article IV of the lease agreement provides a process for determining the amount of rent owed during the years after the tenth lease year. Section 1(C) provides that "Lessee shall pay to Lessor annual rent, in an amount equal to Ten percent (10%) of the appraised value of the Demised Premises (exclusive of the value of all Improvements)." This language is essentially the same as the language used when determining the amount of the purchase price. Defendant argues that because the lease would not be included in the consideration of the value of the property for the purposes of paying rent, this court should not construe the contract to include that value when interpreting the language regarding the purchase price. There is no evidence in the record to establish that the parties did in fact exclude the lease when determining the appraised value for the purposes of setting the rent obligation. Nevertheless, we do not find this language to establish that the lease should not be included at the time the lessee exercised the option to purchase. Valuing the property at the time of exercising the option would be a different situation than valuing the property for the purposes of rent.

Moreover, we find other language in the agreement to provide strong evidence of intent to include the lease in the valuation. As discussed above, the lease clearly states that "there shall be no merger of the leasehold estate in and with the fee simple title" when the lessee purchases the property. The lease and the leasehold created "shall continue in full force and effect." If the lessee desires to terminate the lease, he must file a written instrument with the office of the recorder of deeds. These provisions lend strong support to the conclusion that the lease is an encumbrance on the property that the appraisers must consider in calculating the value of the property.

Section 2 of article XIII also suggests that the lease encumbrance be considered. In that section the lease provides that when the lessee exercises the option, "[t]itle to the Demised Premises shall be conveyed to Lessee *** by good and sufficient general warranty deed, subject to no matters other than those to which the Demised Premises was subject at the time of commencement of the term of the Lease, then current general real estate taxes, and installments of special assessments levied or assessed after the date of commencement of the term of this Lease and to matters done or suffered to be done by Lessee or those claiming by, through or under Lessee." This language indicates

that the contracting parties understood that if the option to purchase was exercised, the lessee would be purchasing the property subject to the lease agreement, but no other encumbrances.

Defendant argues that the lease contains a latent ambiguity which must be resolved by the court. "A latent ambiguity exists where a contract's terms are clear on their face, but extrinsic evidence creates uncertainty as to the meaning of the terms." *De Kalb Bank v. Purdy*, 166 Ill. App. 3d 709, 719 (1988). Defendant attempts to establish a latent ambiguity by relying on affidavits of the persons involved in the original lease negotiation. While the affidavits may establish that the parties intended something other than what the language in the contract suggests, the statements of these individuals do not establish a latent ambiguity allowing the court to rely on such statements to interpret the contract. The affidavits do not explain any term in the contract that may have had a specialized meaning or a meaning that is confusing or unknown to the court. The affidavits merely assert the parties' actual intent when signing the lease. Defendant has failed to demonstrate a latent ambiguity.

■ Finally, defendant argues that the options to extend the ground lease should not be considered in the valuation of the property. The definition of "Demised Premises" in the lease includes the land with all "the rights, privileges and easements thereunto belonging or in anywise thereunto appertaining." As already determined, the language of the agreement establishes that the lease is to be included in the calculation of the purchase price. The agreement's language also indicates that the terms of the lease that provided for extensions to the lease should also be considered. If the lease survives the exercise of the option, there is no reason to conclude that the options to extend, which are terms of that lease, would not survive.

While defendant claims the result in this case is unjust, we note that the previous increases in rent should inure to the benefit of defendant since the increased rental allowing a 10% return will correspondingly increase the purchase price. The impact of potential future rent increases will also be a favorable factor for defendant.

For the aforementioned reasons, we affirm the orders of the circuit court.

Affirmed.

THEIS and GALLAGHER,[1] JJ., concur.

---

[1]Justice Hourihane originally heard oral argument in this case. Upon his

recusal, Justice Gallagher was substituted, and he has reviewed the record, briefs and audio recording of the oral argument.