# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Nationwide Mutual Fire Insurance Co. v. T&N Master Builder & Renovators*, 2011 IL App (2d) 101143

| | |
|---|---|
| Appellate Court Caption | NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, as Subrogee of Michael Markowitz, Plaintiff-Appellant, v. T AND N MASTER BUILDER AND RENOVATORS, d/b/a TN Construction, and TONY DELIGIO, Individually and d/b/a TN Construction, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-10-1143 |
| Filed | October 25, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff insurer issued an insurance policy covering the property rented by defendants and owned by plaintiff's subrogor and defendants occupied the property as holdover tenants at the time of a fire that damaged the property, the trial court properly determined that plaintiff could not sue defendants as subrogee of the owner and entered judgment on the pleadings for defendants on the ground that defendants were coinsureds under the policy issued to the owner and that plaintiff's action was barred by *Dix*, and, furthermore, even if plaintiff had not forfeited the argument that the "holdover" provision of the lease made defendants liable for all damages resulting from their continued possession of the property, the more specific provision of the lease regarding fire damage controlled over the provision pertaining to damages generally. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 09-L-748; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stuart M. Brody, of Sneckenberg, Thompson & Brody, LLP, of Chicago, for appellant. |
| | Daniel P. Costello and James C. Barrow, both of Daniel P. Costello & Associates, of Chicago, for appellees. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. Presiding Justice Jorgensen and Justice Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff, Nationwide Mutual Fire Insurance Company (as subrogee of Michael Markowitz), appeals an order of the circuit court of Lake County granting judgment on the pleadings (735 ILCS 5/2-615(e) (West 2008)) in favor of defendants T&N Master Builder and Renovators and Tony Deligio. Plaintiff had issued an insurance policy covering property owned by Markowitz. Defendants were tenants upon the property. While the property was occupied by defendants, a fire occurred, damaging the building. The trial court determined that plaintiff could not maintain an action as subrogee against defendants, because they were coinsureds under Markowitz's policy with plaintiff. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3 On February 9, 2007, a fire occurred in a building rented by defendants. The property was insured under a policy issued by plaintiff. As a result of the fire, plaintiff was obligated to pay the owner of the property $140,328.98. Plaintiff now brings this action in subrogation to recover the $140,328.98 from defendants. Plaintiff alleges that the fire resulted from defendants' negligence.

¶ 4 On December 11, 2005, Markowitz entered into a commercial leasing agreement with defendants. At the time of the fire, the lease was expired. A holdover tenancy resulted. Plaintiff alleges 11 counts in all, including negligence, spoliation of evidence, and breach of

contract. Defendants filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Civil Practice Law (735 ILCS 5/2-615(e) (West 2008)), which the trial court granted. It found that defendants were coinsureds under the terms of the lease and therefore plaintiff could not maintain an action against them, relying on *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314 (1992).

¶ 5     The relevant provisions of the lease are as follows:

"4. REPAIR. The Lessee covenants and agrees with Lessor to take good care of and keep in clean and healthy condition the Premises and their fixtures, and to commit or suffer no waste therein; that no changes or alterations of the Premises shall be made or partitions erected, nor walls papered without the consent in writing of Lessor; that Lessee will make all repairs required to the walls, windows, glass, ceilings, paint, plastering, plumbing work, pipes, and fixtures belonging to the Premises, whenever damage or injury to the same shall have resulted from misuse or neglect; and Lessee agrees to pay for any and all repairs that shall be necessary to put the Premises in the same condition as when he entered therein, reasonable wear and loss by fire excepted, and the expense of such repairs shall be included within the terms of the lease.

\* \* \*

8. HOLDING OVER. If the Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse of time or otherwise, then the Lessor may at Lessor's option within thirty days after the termination of the term serve written notice upon Lessee that such holding over constitutes either (a) renewal of this lease for one year, and from year to year thereafter, at double the rental specified under Section 1 for such period, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rental specified under Section 1, or (c) creation of a tenancy at sufferance, at a rental of $75.00 dollars per day for the time Lessee remains in possession. If no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created. In such a case if specific per diem rental shall not have been inserted herein at (c) such per diem rental shall be one-fifteenth of the monthly rental specified under Section 1 of this lease. Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee.

\* \* \*

15. FIRE AND CASUALTY. In case the Premises shall be rendered untenantable [*sic*] by fire or other casualty, Lessor may at his option terminate this lease, or repair the Premises within thirty days, and failing so to do, or upon the destruction of the Premises by fire, the term hereby created shall cease and determine."

## II. ANALYSIS

¶ 6

¶ 7     Plaintiff raises two main issues on appeal. First, it contends that the rule announced by the supreme court in *Dix*, 149 Ill. 2d 314, should not apply in this case, because *Dix* involved a residential lease and the instant case involves sophisticated, commercial parties. Second, plaintiff asserts that certain provisions of the lease make defendants liable for the damages to the building. We find neither contention well founded.

¶ 8 As this appeal comes to us following a grant of a motion for judgment on the pleadings (735 ILCS 5/2-615(e) (West 2008)), review is *de novo*. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). When a defendant makes a motion for judgment on the pleadings, he concedes the truth of the well-pled facts of the plaintiff's complaint. *Parkway Bank & Trust Co. v. Meseljevic*, 406 Ill. App. 3d 435, 442 (2010). In reviewing the motion, we must draw all reasonable inferences in favor of the nonmovant (*Parkway*, 406 Ill. App. 3d at 442) and construe the allegations strictly against the movant (*Pioneer Bank & Trust Co. v. Austin Bank of Chicago*, 279 Ill. App. 3d 9, 13 (1996)). We must determine whether there is an issue of material fact presented by the pleadings. *Pioneer*, 279 Ill. App. 3d at 13. If no such issue is presented, then we determine whether the movant is entitled to judgment. *Pioneer*, 279 Ill. App. 3d at 13.

¶ 9 We further note that this is an action in subrogation. As the supreme court explained in *Dix*, subrogation is an action in chancery. *Dix*, 149 Ill. 2d at 319. It is "designed to place the ultimate responsibility for the loss upon the one on whom in good conscience it ought to fall and to reimburse the innocent party who is compelled to pay." *Reich v. Tharp*, 167 Ill. App. 3d 496, 500-01 (1987). As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. *Dix*, 149 Ill. 2d at 319. Subrogation is not allowed against a tenant where the tenant is considered a coinsured under the landlord's insurance policy. *Reich*, 167 Ill. App. 3d at 501. With these principles in mind, we now turn to the issues raised by plaintiff.

¶ 10                    A. Whether This Action Can Proceed in Light of *Dix*

¶ 11 The first issue presented in this appeal is rather straightforward. If the rule our supreme court announced in *Dix*, 149 Ill. 2d 314, controls, as the trial court held, this action cannot proceed. Quite simply, it is well settled that an insurer may not subrogate against a coinsured. *Chubb Insurance Co. v. DeChambre*, 349 Ill. App. 3d 56, 60 (2004). In *Dix*, 149 Ill. 2d at 323, our supreme court held that a "tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining the status of co-insured under the insurance policy." Hence, unless *Dix* does not apply for some reason, defendants are coinsureds and plaintiff cannot subrogate against them.

¶ 12 Plaintiff believes that it has identified such a reason. It points out that *Dix* involved a residential lease, while in the instant case, a commercial lease is at issue. As sophisticated parties, plaintiff and defendants could have allocated risks and costs of insurance as they saw fit. Moreover, as commercial tenants, defendants were in a better bargaining position to negotiate the question of insurance coverage. It is certainly true that the law often distinguishes between sophisticated and nonsophisticated parties. See, *e.g.*, *McRaith v. BDO Seidman, LLP*, 391 Ill. App. 3d 565, 575-76 (2009); *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1037 (2007); *Topps v. Unicorn Insurance Co.*, 271 Ill. App. 3d 111, 115 (1995). Thus, the distinction plaintiff seeks to draw finds support in the law. Indeed, plaintiff calls our attention to substantial foreign authority in support of its position. See, *e.g.*, *State Farm Florida Insurance Co. v. Loo*, 27 So. 3d 747,

750 n.4 (Fla. Dist. Ct. App. 2010) (collecting cases).

¶ 13    Defendants respond that the supreme court drew no such distinction in *Dix*. Moreover, they point out, *Dix* relies extensively on *Cerny-Pickas & Co. v. C.R. Jahn Co.*, 7 Ill. 2d 393 (1955), which involved a commercial lease. In that case, the court stated:

> "While the cases are not in accord, we believe that the result here reached is supported by better reasoned decisions. Seventy years ago in *Lothrop v. Thayer*, 138 Mass. 466, 475 [(1883)], the court said: 'The ancient law has been acquiesced in, and consciously or unconsciously, the cost of insurance to the landlord, or the value of the risk enters into the amount of rent.' And in the leading case of *General Mills v. Goldman*, 184 [F.2d 359, 366 (8th Cir. 1950)], the court said ***: 'They necessarily consciously figured on the rentals to be paid by the tenant as the source of the fire insurance premiums and intended that the cost of insurance was to come from the tenants. In practical effect the tenant paid the cost of the fire insurance.' *Day Wood Heel Co. v. Rover*, 123 Ohio St. 349 *** [(1931)], also supports our conclusion.
>
> The principal cases to the contrary are *Carstens v. Western Pipe and Steel Co.*, 142 Wash. 259 *** [(1927)]; *Morris v. Warner*, 207 Cal. 498 *** [(1929)], and *Winkler v. Appalachian Amusement Co.*, 238 N.C. 589 *** [(1953)]. In the first two of these cases it does not appear that the leases contained provisions with respect to insurance like those in the lease before us. In the third case, similar insurance provisions were involved, but the court relied upon the dissenting opinion in the *General Mills* case and upon the first opinion of the Appellate Court in the present case." *Cerny-Pickas & Co.*, 7 Ill. 2d at 398-99.

Thus, not only did the court favorably cite foreign authority supporting the proposition that a tenant, through the payment of rent, effectively pays to insure rented property, it expressly rejected a contrary rule. Moreover, it did so in the commercial realm.

¶ 14    Accordingly, we are compelled to agree with defendants' argument on this issue. The law is well settled that we are bound by the decisions of our supreme court. *In re Clifton R.*, 368 Ill. App. 3d 438, 440 (2006). Both *Dix* and *Cerny-Pickas* remain good law. Moreover, we do not believe they are distinguishable as plaintiff suggests. Though *Dix* did involve a residential lease, *Cerny-Pickas* did not. Accordingly, we conclude that these cases control in the present case. Parenthetically, we note that the approach set forth in *Dix* appears to be the approach followed in the majority of American jurisdictions. See *Dattel Family Ltd. Partnership v. Wintz*, 250 S.W.3d 883, 888 (Tenn. Ct. App. 2007) (collecting cases).

¶ 15    Plaintiff correctly points out that the *Dix* court did not rely exclusively on the fact that the defendant in that case had paid rent in finding subrogation unavailable to the insurance company under the circumstances of that case. It also looked to the lease as a whole and concluded that the parties intended that the tenant would not be responsible for damages caused by fire and that the landlord would look solely to the insurer for compensation for such a loss. See *Dix*, 149 Ill. 2d at 321-23. Plaintiff contends that the lease at issue in this case does not manifest a similar intent.

¶ 16    Leases are a type of contract and are therefore generally governed by the rules of contract law. *Napleton v. Ray Buick, Inc.*, 302 Ill. App. 3d 191, 201 (1998). Accordingly, our chief

-5-

goal in analyzing a lease is to ascertain the intent of the parties. *Midland Management Co. v. Helgason*, 158 Ill. 2d 98, 104 (1994). Where the language of a lease is unambiguous, the parties' intent must be ascertained from the lease alone. *Napleton*, 302 Ill. App. 3d at 201. The lease must be construed in such a manner that no part of it is rendered meaningless. *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 510-11 (2005). Moreover, portions of the lease should not be considered in isolation, for "to ascertain the intent of the parties, we must consider the lease 'as a whole.'" *Dix*, 149 Ill. 2d at 320.

¶ 17 Plaintiff asserts that the lease contains no language exculpating defendants from negligent acts and that it does not expressly identify defendants as coinsureds. Plaintiff here attempts to distinguish *Dix*. The lease in *Dix* expressly made the tenant responsible for his own personal property without mentioning responsibility for the premises. *Dix*, 149 Ill. 2d at 322. From this provision, the supreme court inferred an intent that the landlord would provide his own insurance against fire. *Dix*, 149 Ill. 2d at 322. Conversely, plaintiff contends, in this case, the lease is completely silent as to the tenant's responsibility for its own negligence.

¶ 18 We disagree with plaintiff's reading of the relevant portions of the lease. As defendants point out, section four of the lease states:

"The Lessee covenants and agrees with Lessor to take good care of and keep in clean and healthy condition the Premises and their fixtures, and to commit or suffer no waste therein; that no changes or alterations of the Premises shall be made or partitions erected, nor walls papered without the consent in writing of Lessor; that Lessee will make all repairs required to the walls, windows, glass, ceilings, paint, plastering, plumbing work, pipes, and fixtures belonging to the Premises, whenever damage or injury to the same shall have resulted from misuse or neglect; and Lessee agrees to pay for any and all repairs that shall be necessary to put the Premises in the same condition as when he entered therein, reasonable wear and *loss by fire excepted*, and the expense of such repairs shall be included within the terms of the lease." (Emphasis added.)

Plaintiff argues that this section, read as a whole, does not apply to negligent acts. However, the plain language of this section indicates that it is concerned with damages resulting from defendants' negligence. Indeed, it expressly imposes a duty upon defendants to "make all repairs required to the walls, windows, glass, ceilings, paint, plastering, plumbing work, pipes, and fixtures" when the "damage or injury to the same shall have resulted from misuse or neglect." "[L]oss by fire" is specifically excluded, and the exclusion is clearly broad enough to encompass defendants' negligence.

¶ 19 Another passage confirms the parties' intent that the landlord provide insurance for loss by fire. Section 12 states:

"Lessee will in every respect comply with the ordinances of the municipality aforesaid, with the rules and orders of the health officers thereof, with the orders and requirements to the police department, with the requirements of any underwriters' association so as not to increase the rates of insurance upon the building and contents thereof, and with the rules and orders of the fire department in respect to any matters coming within their jurisdiction."

Initially, we note that this section imposes a duty upon the tenant to take steps that would prevent the rate of insurance on the building from increasing. Obviously, this would be of concern to the landlord only if the landlord were responsible for paying those rates. Further, it requires the tenant to comply with orders of the fire department. Such matters would be of no concern to the landlord if the landlord were not responsible for damages caused by fire.

¶ 20    Accordingly, given the plain language of the lease–taken as a whole–along with the fact that, in accordance with *Dix*, defendants contributed to the insurance premiums by virtue of paying rent, we hold that defendants were coinsureds under the policy issued by plaintiff. As an insurance company cannot subrogate against a coinsured (*Chubb Insurance Co.*, 349 Ill. App. 3d at 60), the trial court properly granted judgment on the pleadings. We therefore affirm its judgment.

¶ 21            B. Whether Other Provisions of the Lease Render Defendants Liable

¶ 22    Before closing, we must address one additional argument. Plaintiff points to section eight of the lease, titled "HOLDING OVER." That section states as follows:

> "If the Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse of time or otherwise, then the Lessor may at Lessor's option within thirty days after the termination of the term serve written notice upon Lessee that such holding over constitutes either (a) renewal of this lease for one year, and from year to year thereafter, at double the rental specified under Section 1 for such period, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rental specified under Section 1, or (c) creation of a tenancy at sufferance, at a rental of $75.00 dollars per day for the time Lessee remains in possession. If no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created. In such a case if specific per diem rental shall not have been inserted herein at (c) such per diem rental shall be one-fifteenth of the monthly rental specified under Section 1 of this lease. *Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee*." (Emphasis added.)

Plaintiff argues that this provision renders defendants liable for all damages resulting from their continued possession of the premises.

¶ 23    Defendants respond that this issue is forfeited, as plaintiff did not raise it before the trial court. It is certainly true that issues raised for the first time on appeal are forfeited. *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 695 (2010). In its reply brief, plaintiff does not identify where it had previously raised this issue. Instead, it contends that there is "no reason whatsoever that the court on appeal with a *de novo* review cannot consider" this issue since the "contract and lease [are] part of the evidence and [r]ecord on [a]ppeal." We find this assertion unsupported, and we are unaware of any such exception to the forfeiture doctrine. Such an exception would effectively eviscerate the rule. If all it took to preserve an issue were that pertinent material be present in the record and that review be *de novo*, under what circumstances would the failure to raise an issue in a case involving a dispositive pretrial motion ever result in forfeiture? Accordingly, we agree with defendants that this issue is forfeited. Moreover, it also lacks merit.

¶ 24    In their briefs, the parties refer to defendants as holdover tenants rather than tenants at sufferance. When a tenant remains in possession of premises after the expiration of a lease, either a tenancy at sufferance or a holdover tenancy will result. *Bransky v. Schmidt Motor Sales, Inc.*, 222 Ill. App. 3d 1056, 1060 (1991). The original terms of the lease apply when a tenant holds over. *Roth v. Dillavou*, 359 Ill. App. 3d 1023, 1027 (2005). Conversely, no privity exists between a tenant at sufferance and the former landlord. *Roth*, 359 Ill. App. 3d at 1027. There is a presumption–absent evidence to the contrary–that a tenant is holding over. *Bransky*, 222 Ill. App. 3d at 1061. Given the presumption along with the parties' apparent agreement on the subject, we will consider defendants to be holdover tenants for the purpose of resolving this issue. This is significant, as a landlord cannot enforce covenants of an original lease against a tenant at sufferance. *Troccoli v. L&B Products of Illinois, Inc.*, 189 Ill. App. 3d 319, 322 (1989). However, as we are dealing with a holdover tenancy, the terms of the entire lease remain effective.

¶ 25    Therefore, plaintiff's attempt to read the final sentence of section eight in isolation is improper. Indeed, this is exactly the sort of analysis the supreme court counseled against in *Dix*, 149 Ill. 2d at 320, where it explained, "In Illinois, courts must look to the lease 'as a whole' and the spirit of the agreement between the parties rather than search for an express provision in the lease." Plaintiff's analysis also conflicts with ordinary principles of contractual construction. While the language that plaintiff relies upon in section eight does place responsibility upon defendants to pay for all damages sustained due to their retention of the premises, section four specifically excepts losses caused by fire. It is well established that, where an inconsistency exists in a contract, a more specific provision controls over a more general one. *Jay v. United Defense Industries, Inc.*, 162 Ill. App. 3d 1071, 1077 (1987). Hence, the more specific provision relating to damages resulting from fire controls over the provision that pertains to damages generally. Even if plaintiff had not forfeited this argument, we would not find it persuasive.

## III. CONCLUSION

¶ 27    In light of the foregoing, the order of the circuit court of Lake County granting defendants' motion for judgment on the pleadings is affirmed.

¶ 28    Affirmed.